Ronald J. Kern and Joy C. Kern, his wife, and Jolly Day Care Center and Nursery School, Inc. *v.* Zoning Hearing Board of The Township of Tredyffrin and the Board of Supervisors of The Township of Tredyffrin. The Board of Supervisors of Tredyffrin Township, Appellant.

Argued June 10, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*William H. Lamb, Lamb, Windle & McErlane, P.C.,* for appellant.

*Harry F. Dunn, Jr., Dunn and Miller,* for appellees.

OPINION BY JUDGE CRAIG, August 24, 1982:

The Board of Supervisors of Tredyffrin Township (township) appeals an order of the Court of Common Pleas of Chester County reversing the decision of the township zoning hearing board (board) which denied Ronald and Joy Kern's application for a special exception.

The Kerns are equitable owners of a lot and large house located at the intersection of Old Eagle School and Crestline roads in Tredyffrin Township. Under the township's zoning ordinance, the property is in the R-1 residential district. The Kerns applied for a special exception to use the property for a nursery

398

school and day care center,[1] uses permitted by special exception in the R-1 district.[2]

Old Eagle School Road (Old Eagle School) is a heavily trafficked state highway which runs north and south. Crestline Road (Crestline) is, for the most

[1] Since 1973, the Kerns have operated a nursery school and day care center on Old Eagle School Road in Tredyffrin Township, .7 miles south of the property. The Kerns propose to move their school to the new site.

[2] Ordinance Section 701D provides in pertinent part:

D. The following uses when authorized as a special exception subject to the general standards prescribed in Sections 1807 and 2110.

1. Educational . . . as follows:

a. . . . private school . . . child or day care center.

Section 1807 prohibits uses which constitute a public hazard and contains the following general detrimental effect standard:

3. The proposed operation or use shall not endanger surrounding areas by reason of an unusual fire, explosion or other safety hazard.

Section 2110 provides in pertinent part:

A. . . . where the Board is required to consider a request for a special exception . . . in accordance with the provisions of this Ordinance, the Board shall to the full extent permitted by law consider the following factors where appropriate.

. . . .

3. Consider the public interest in, or the need, for the proposed change, and determine that the proposal will serve the best interests of the Township, the convenience of the community (where applicable), and the public health, safety, morals and general welfare.

. . . .

6. Guide the development of highway frontage insofar as possible so as to limit the total number of access points, reduce the need for on-street parking and encourage the frontage of buildings on parallel marginal roads perpendicular to the highway.

7. Consider the probable effects of proposed development on highway congestion and insure that adequate access arrangements are provided in order to protect major highways from undue congestion and hazard.

part, a lightly traveled local residential road, which terminates at its intersection with Old Eagle School.[3] Parking facilities for Amtrak's Strafford passenger station are located on the south corner of the intersection, directly across Crestline from the Kerns' proposed school site. Crestline provides access to the Amtrak parking.

At the board's hearing, the Kerns testified that the proposed school would have approximately seventy-five students[4] and fifteen staff members and would be open from 7:30 a.m. to 6:00 p.m. The Kerns presented the testimony of a traffic expert, who opined that the existing road system could accommodate the traffic which would be generated by the proposed use without causing safety hazards.

The township and several nearby surrounding residents opposed the Kerns' application. The township's traffic expert testified that he observed occasional backups on Crestline, at the Old Eagle School intersection, during peak traffic volume hours;[5] that the proposed school would substantially increase peak hour traffic on Crestline and the number of left turns across traffic;[6] that sight distance[7] for traffic exiting

---

[3] Crestline Road runs east from this "T" intersection.

[4] The projected student population includes some students who would attend part-time each day and some who would attend only three days per week.

[5] The intersection is controlled by a single stop sign for motorists on Crestline.

[6] On cross-examination, the township's expert was asked whether the additional peak hour traffic generated by the school would create a hazardous situation. He replied:

   I think it could lead to that. . . . I think it could contribute to not only congestion but also to potential safety conditions. . . .

[7] The distance that a driver can see an oncoming car in a particular direction.

onto Crestline from the property's existing driveway[8] "could create an unsafe situation," particularly when traffic was backed up on Crestline from the intersection at Old Eagle School; that Old Eagle School was congested during peak traffic hours; and that left turns onto Crestline from Old Eagle School "could possibly create some safety problems and safety hazards."

Both experts agreed that approximately sixty vehicles would enter and leave the proposed school in the morning between 7:30 and 9:30 a.m., and again in the afternoon, between 4:00 and 6:00 p.m.[9] The experts also agreed that the morning and afternoon traffic hours for the Crestline and Old Eagle School intersection occur within these periods.[10]

The board found that the traffic which would be generated by the proposed school was "likely to . . . result in undue traffic congestion." Based on this

---

[8] The Kerns' site plan includes an alternate internal driveway circulation pattern and a new driveway exit onto Crestline. On cross-examination, the township's expert testified that this proposed exit would help alleviate the sight distance problem.

[9] The board found that, on week days, the following approximate number of vehicle trips pass the school property: between 7:30 and 9:30 a.m., 2500 trips on Old Eagle School and 160 trips on Crestline; between 3:00 and 6:00 p.m., 4100 to 4200 vehicle trips on Old Eagle School and 350 trips on Crestline.

[10] The township's expert testified that projected additional traffic from the school would not affect non-peak hour traffic safety. However, he believed that a significant increase in turning movements, particularly left turns across traffic, would increase delays, during peak traffic hours, for motorists attempting to merge from Crestline onto Old Eagle School. He opined that motorists confronted with longer delays would become impatient and might attempt to enter gaps in moving traffic on Old Eagle School which would not normally be acceptable. The Kerns' expert believed that gaps in peak hour traffic on Old Eagle School were adequate to allow motorists to merge safely and that any delays would not increase unsafe merging.

finding, the board denied the Kerns' application because it concluded that "projected traffic . . . would create a hazardous traffic condition."

Because the common pleas court took no additional evidence, our scope of review is limited to determining whether the board made an error of law or abused its discretion and whether the board's decision is supported by substantial evidence. *West Whiteland Township v. Sun Oil Co.*, 12 Pa. Commonwealth Ct. 159, 316 A.2d 92 (1974).

An applicant, by showing that the proposed use is permitted by special exception and that it complies with the specific requirements of the ordinance, identifies the proposal as one which the municipal legislative body has determined to be appropriate in the district and therefore presumptively consistent with the health, safety and general welfare of the community. *Zoning Hearing Board v. Konyk*, 5 Pa. Commonwealth Ct. 466, 470-71, 290 A.2d 715, 718 (1972).

The standards in the ordinance's Sections 1807 and 2110 A are general, non-objective, standards. The persuasion burden and the duty of going forward with the evidence, as to such general standards, is on the objectors unless the ordinance expressly shifts to the applicant the persuasion burden concerning general detrimental affect upon community health, safety and welfare. *Bray v. Zoning Board of Adjustment*, 48 Pa. Commonwealth Ct. 523, 410 A.2d 909 (1980). Section 2110 concludes by stating:

> D. In the case of the request for a special exception . . . it shall be the responsibility of the applicant to present such evidence as is necessary to demonstrate that the proposed use or modification complies with the pertinent criteria or standards set forth in this Section.

This provision does not expressly refer to any "burden" concept or otherwise deal with any *relative*

measure of proof; it therefore does not attempt to shift the persuasion burden. Although its terms ("responsibility . . . to present . . . evidence") may be read as placing the evidence presentation duty upon the applicant—and it can certainly do so as to *specific* standards, *Bray*—our decisions have held that the evidence presentation duty, as applied to general detriment standards, cannot be shifted to the applicant and must remain upon the objectors, *Bray; Derr Flooring Co. v. Whitemarsh Township Zoning Board,* 4 Pa. Commonwealth Ct. 341, 347-48, 285 A.2d 538, 542 (1972).

Here, the objectors met their evidence presentation burden with respect to potential traffic hazards. To meet their persuasion burden, the objectors must have proved that there is a high probability that the school will generate traffic patterns not normally generated by that type of use and that this abnormal traffic will pose a substantial threat to the health and safety of the community. *Konyk; Bray; West Whiteland; Lower Providence Township and Wood v. Ford,* 3 Pa. Commonwealth Ct. 382, 283 A.2d 731 (1971).

The board did not find that the school's impact upon traffic safety would be greater than would normally be expected from that type of use or that there was a high probability that the school would cause a substantial traffic hazard. The fact that a proposed use would contribute to projected traffic congestion primarily generated by other sources is not a sufficient basis for denying the special exception. *West Whiteland.* Therefore, the board erred by denying the special exception.

Accordingly, we affirm.

### Order

Now, August 24, 1982, the order of the Court of Common Pleas of Chester County, No. 292, October

Term, 1980, dated June 3, 1981, is hereby affirmed subject to modification. We order that the special exception application be granted, subject to other zoning ordinance provisions duly applicable, and subject to such reasonable conditions, as to traffic circulation or otherwise, as the zoning hearing board may impose.