559 A.2d 107

**Irving R. ABBEY et al., Appellants,**

**v.**

**ZONING HEARING BOARD OF the BOROUGH OF EAST STROUDSBURG and Monroe County General Authority, Appellees. (Two Cases)**

Commonwealth Court of Pennsylvania.

Argued April 6, 1989.

Decided May 24, 1989.

---

Steven E. Krawitz, Edwin Krawitz, Krawitz & Krawitz, E. Stroudsburg, for appellants.

Robert M. Maskrey, Jr., Robinson, Hoffner & Billick, Stroudsburg, for appellee, Zoning Hearing Board of the Borough of East Stroudsburg.

Edmund G. Flynn, Bensinger, Flynn & Weekes, Stroudsburg, for appellee, Monroe County Gen. Authority.

Before BARRY and PALLADINO, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Irving R. Abbey, other landowners, and the Pocono Environmental Club (Appellants) appeal from an order of the Court of Common Pleas of Monroe County which affirmed the grant of a special exception use permit (permit) by the Zoning Hearing Board of the Borough of East Stroudsburg (Board) to the Monroe County General Authority (Authority).

The facts are as follows. On May 6, 1987, the Authority filed an application pursuant to Section 4.200(e)(5) of the Zoning Ordinance of the Borough of East Stroudsburg, Ordinance 803, adopted August 2, 1983 (Ordinance), with the Zoning Officer of East Stroudsburg for a permit to construct and operate a "waste-to-energy" and recycling facility (facility). The proposed facility is to be located in an M–1 General Industrial District (M–1 District). The facility would receive solid wastes from commercial haulers operating within Monroe County. Combustible wastes would be processed to produce steam, which generates electricity. The electricity would then be sold to Metropolitan–Edison Company (Met–Ed). Non-combustibles, such as glass and metal, would be separated and recycled, while the other non-combustibles and the ash residue from the processed combustibles would be taken to a permitted landfill operated by either the Authority or out-of-county landfills.

Nine hearings were held before the Board which took voluminous testimony from expert witnesses and objectors to the facility. On November 19, 1987, the Board granted the Authority's application.

The objectors to the facility, Appellants here, filed an appeal to the trial court in which the Authority intervened. The trial court, without taking additional evidence, entered an order in favor of the Authority. Appellants then appealed to this Court. Upon the filing of this appeal, the Authority petitioned the trial court pursuant to Section 1008(4) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, added by the Act of June 1, 1972, P.L. 333, *as amended,* 53 P.S. § 11008(4), to impose a bond upon the Appellants as a condition of their appeal. The trial court granted the petition and set bond at $3 million. Appellants also appealed this order. The appeals from both orders have been consolidated for consideration by this Court.

Our scope of review, where a trial court took no additional evidence in reviewing a decision of a zoning hearing board, is limited, as was the trial court's, to a determination of whether the Board abused its discretion, or committed an error of law. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983); *Lamb v. Zoning Board of Adjustment, Borough of Ambridge,* 111 Pa.Commonwealth Ct. 534, 534 A.2d 577 (1987).

■ A board abuses its discretion only if its findings are not supported by substantial evidence. *Valley View.* Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

Appellants make two arguments: 1) that the Board abused its discretion in granting the permit to the Authority; and, 2) that the trial court abused its discretion by imposing a $3 million bond as a condition for the appeal.

I

■ First, we must consider whether the Board abused its discretion in granting the special exception. A special exception is authorized pursuant to Section 913 of the MPC, 53 P.S. § 10913. It is defined as a permitted use, and not

an exception, to which an applicant is entitled, unless a zoning board determines, according to the standards set forth in the ordinance, that the proposed use would adversely affect the community. *Bray v. Zoning Board of Adjustment,* 48 Pa.Commonwealth Ct. 523, 410 A.2d 909 (1980).

The important characteristic of a special exception is that it is a conditionally permitted use, legislatively allowed if the objective standards of the ordinance are met. *Id.* An applicant has the burden of persuasion as to the *specific criteria* and standards of the ordinance. *New Bethlehem Borough Council v. McVay,* 78 Pa.Commonwealth Ct. 167, 467 A.2d 395 (1983).

As to the subjective standards of an ordinance, "Pennsylvania decisions have placed on the objectors the 'burden' of showing that the proposal [is] detrimental to the public health, safety and welfare." *Bray,* 48 Pa.Commonwealth Ct. at 527, 410 A.2d at 911, *citing Borden Appeal,* 369 Pa. 517, 87 A.2d 465 (1952); *Zoning Hearing Board v. Konyk,* 5 Pa.Commonwealth Ct. 466, 290 A.2d 715 (1972); and *Root v. Erie Zoning Board of Appeals,* 180 Pa.Superior Ct. 38, 118 A.2d 297 (1955).

Here, Section 3.100 of the Ordinance states that the M–1 District, where the proposed facility is to be located, is "[p]rimarily for manufacturing, assembling and fabrication activities, including large-scale or *specialized industrial operations* requiring good access by road and/or railroad and perhaps requiring special sites or services." (Emphasis added.)

Section 4.200(e)(5) of the Ordinance allows as a special exception in the M–1 District, "[h]eavy industrial uses, including railroad yards and repair shops and the manufacturing of products from raw materials, including the processing of iron ore, coal and chemicals, the brewing and distillation of liquids and the manufacture of gas."

The Authority presented witnesses who established compliance with the objective standards of the Ordinance concerning land area (§§ 4.300, 5.615); parking (§§ 5.500–5.-

503); lighting (§ 5.703); height (§§ 4.300, 5.107); landscaping (§ 5.709); setback (§ 4.300) and proximity to residential or institutional districts (§ 5.615). Appellants introduced no evidence which contradicted the evidence presented by the Authority.

Appellants assert that the Board erred because 1) the Authority did not meet the objective standards of the Ordinance; 2) the Authority did not meet the subjective standards of the Ordinance; and 3) Appellants' testimony outweighed the testimony of the Authority.

■ Appellants first argue that the Authority did not meet its burden regarding the objective standards of the Ordinance before the Board because it failed to "produce formal health risk assessment and environmental impact studies." (Appellants' Brief at 42). This argument related to the *subjective* nature of the grant of the special exception, where the burden is upon the objectors. Nowhere in the Ordinance is there an objective requirement that in order to obtain a special exception, the applicant must "produce formal health risk assessment and environmental impact studies."

Secondly, Appellants argue that the Authority did not comply with Sections 4.104, 5.600 [1] and 5.615 [2] of the Ordi-

**1.** Section 5.600, Special Exception Use Regulation states:
   [a] Special Use shall not cause substantial injury to the value of other property where it is to be located; shall conform with regulations applicable to the District where located; shall be compatible with adjoining development; shall provide adequate landscaping and screening to protect adjoining areas; shall provide off-street parking and loading so as to minimize interference with traffic on the local streets *and shall not jeopardize the public health, safety, welfare and convenience.*
   (Emphasis added.)

**2.** Section 5.615, Heavy Industry provision states:
   [b]uilding coverage shall not exceed fifty percent. No structure or active operation shall be located closer than 200 feet to an R or INST District. Reasonable protection shall be provided for the natural and man-made environment. Screening and fencing shall be provided against noise, glare, heat, vibration and *emissions beyond the property lines of the particular use.*
   (Emphasis added.)

nance, which relate to the subjective factors of health, safety and welfare. Section 4.104 of the Ordinance, in pertinent part, prohibits:

(a) Any use that involves the use or production of dangerous and hazardous materials or products.

(b) Any use that may cause injury, annoyance, or disturbance to any of the surrounding properties or to their owners and occupants.

(c) Any use which involves the discharge or disposal of liquid or solid wastes which may adversely affect health or sanitation of persons or cause contamination of the soil or watercourses.

(d) Any use which is noxious, or objectionable by reason of the emission of smoke, dust, ash or other form of air pollution.

As to these subjective standards, the objectors must provide *evidence* that there is more than a *mere speculation* of harm. *Foster Grading Company v. Venango Township Zoning Hearing Board,* 49 Pa.Commonwealth Ct. 1, 412 A.2d 647 (1980). The objectors must show that the impact would be greater than would normally be expected from that type of use and that this use would pose a *substantial threat* to the health, safety and welfare of the community. *Appeal of Martin,* 108 Pa.Commonwealth Ct. 107, 529 A.2d 582 (1987); *Kern v. Zoning Hearing Board of the Township of Tredyffrin,* 68 Pa.Commonwealth Ct. 396, 449 A.2d 781 (1982). The Appellants testified they were concerned about the facility's location being so close to schools and hospitals. They introduced a petition opposing the facility, signed by 700 citizens. This evidence did not demonstrate a "strong degree of probability" that "substantial injury" would occur. *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A.2d 587 (1957).

The Authority asserts that because the Department of Environmental Resources (DER) will regulate the facility's operational standards, the Appellants' testimony regarding the health, safety and welfare was, in itself, unnec-

essary. We do not agree. The fact that a facility will most likely be permitted by the DER, does not preclude objectors from introducing testimony that in a particular zoning district, the use, in their opinion, is contrary to the health, safety and welfare of the neighborhood. The grant of a permit by the DER is not tantamount to a zoning permit. To hold otherwise, would undercut the purpose of a zoning board in reviewing whether a proposed use would be contrary to *a particular zoning district's citizens' health, safety and welfare.*

The Board held Appellants failed in their initial duty of presenting evidence and persuading it, as fact-finder, that the proposed use would be detrimental to the "general or nonobjective public interests, such as health, safety and welfare of the neighborhood." *Keystone Chemical Company v. Zoning Hearing Board of Butler Township,* 90 Pa.Commonwealth Ct. 213, 216, 494 A.2d 1158, 1159 (1985) (citations omitted).

■ Finally, Appellants argue that the Board erred in its determination because Appellants' testimony regarding the adverse effects of the facility upon the community outweighed the testimony of the Authority's "paid" experts.[3] This argument goes to the credibility of witnesses. A zoning hearing board, when the trial court takes no additional evidence, is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Muse v. Zoning Hearing Board of Ben Avon Heights Borough,* 52 Pa.Commonwealth Ct. 287, 415 A.2d 1255 (1980). The Board resolves conflicts in testimony, *Lower Allen Citizens Action Group, Inc. v. Lower Allen Township Zoning Hearing Board,* 93 Pa.Commonwealth Ct. 96, 500 A.2d 1253 (1985), and is free to reject even uncontradicted testimony it finds lacking in credibility. *Richland Township v. Hellerman,* 30 Pa.Commonwealth Ct. 438, 373 A.2d 1367 (1977).

**3.** Appellants argue that the Authority's experts were "biased" because of a vested interest in the "incineration industry" and because the experts received "appallingly large money compensation" for their testimony. (Appellants' Brief at 50). Obviously, experts customarily receive remuneration for their testimony.

Having found that substantial evidence supports the Board's findings, we are bound by them. *Lower Allen Citizens Action Group.*[4]

## II

Lastly, we must determine whether the trial court abused its discretion by imposing a $3 million bond as a condition for appeal. Section 1008(4) of the MPC, permits the imposition of a bond, if a court determines that the filing of an appeal is frivolous and for the purpose of delay. In *Collis v. Zoning Hearing Board of the City of Wilkes–Barre*, 77 Pa.Commonwealth Ct. 4, 10, 465 A.2d 53, 57 (1983), we established the standard for determining whether an appeal is frivolous: "A frivolous appeal is 'one in which no justiciable question has been presented and the appeal is readily recognizable as devoid of merit in that there is little prospect that it can ever succeed.' Black's Law Dictionary 601 (5th ed. 1979)."

The trial court, relying upon *Township of Plymouth v. County of Montgomery*, 109 Pa.Commonwealth Ct. 200, 531 A.2d 49 (1987), determined that the Appellants' arguments on appeal to this Court were solely environmental, which could only be addressed in proceedings before the DER. We do not agree. In *Township of Plymouth*, the

---

**4.** Appellants additionally argue that they "were not permitted to properly cross-examine applicant's witnesses or to testify unfettered and unintimidated by the unwelcome manner in which portions of the hearings were conducted." (Appellant's Brief at 52). As to this argument, Appellants refer this Court to their Statement of the Case and the "record as a whole." Appellants do not enlighten us with any specific objections made to the Board's evidentiary rulings. First, Pa.R.A.P. 2117(b) provides that "[t]he statement of the case shall not contain any argument." To refer this Court to the Statement of the Case as argument is contrary to the Rules of Appellate Procedure. Secondly, Pa.R.A.P. 2135 states that "[e]xcept by permission of the court, briefs ... shall not exceed ... 50 pages of conventional typographical printing...." The docket entries do not reveal that permission was requested or granted for Appellants' 63 page brief. Finally, upon review of the record of the *nine* hearings, we believe Appellants had ample time and opportunity to present substantive evidence to the Board. The Board may exclude irrelevant, immaterial or unduly repetitive evidence according to Section 908(6) of the MPC, 53 P.S. § 10908(6). The record does not demonstrate any abuse of discretion by the Board.

township brought an action against the County for a declaration that the County's trash-to-steam refuse disposal plant would violate township ordinances. Here, the trial court focused solely on that portion of *Township of Plymouth* that the DER's broad powers "with respect to the transportation, processing, treatment and disposal of solid waste ... preempted municipal powers to govern those functions by *operational regulations*."[5] *Id.*, 109 Pa.Commonwealth at 210, 531 A.2d at 54 (emphasis added).

The trial court ignored Judge Craig's statement in *Township of Plymouth* that "we must recognize statutory and judicial distinctions between ordinance provisions governing *where* the location of the facility may be (zoning provisions) and, on the other hand, *how* it may be technically designed and operated (operational regulation)." *Id.*, 109 Pa.Commonwealth at 203, 531 A.2d at 51 (emphasis in original). The former is purely a local zoning function, while the latter falls within the province of the DER. The Appellants here testified that the facility would emit "dioxins, furans, heavy metals, acid gases and related toxic compounds" that would adversely affect the public. Although environmental in nature, this testimony also focused on the facility's effect upon the subjective issues of health, safety and welfare of the neighborhood. (Appellants' Brief at 49.) Odors and toxins are concerns of objectors to many permitted industrial uses. For example, the DER could issue a permit to an industry which had submitted all the proper forms and met the required environmental regulations, but if the proposed site was adjacent to or located within a residential area, it may still be adverse to the health, safety and welfare of the community.

While the DER is empowered to protect the environment, it is not a zoning board. If we were to say that a grant of a permit by the DER removes all environmental concerns for an industry to operate in a particular district, we would effectively chill the rights of citizens to come forward with

5. Sections 102–202(b) of the Solid Waste Management Act, Act of July 7, 1980, P.L. 380, 35 P.S. §§ 6018.102–6018.202(b).

evidence regarding their health, safety and welfare, and thus, would emasculate the purpose of a zoning board to resolve these issues. So considered, we hold that the trial court abused its discretion in holding that the appeal was frivolous.

We also hold, contrary to the trial court's holding that the appeal was not filed for purposes of delay. At the June 2, 1988, hearing to determine the amount of bond, if any, to be posted by Appellants, the Authority introduced the testimony of its expert, Les Davies. The purpose of Mr. Davies' testimony was to establish the amount of money the Authority would lose, due to delay in construction of the facility caused by the appeal of the grant of the permit. Mr. Davies testified that the contract the Authority had with Met–Ed to provide steam for electricity would be breached, if construction of the facility was delayed, (Notes of Testimony (N.T.) from June 2, 1988 at 16–17), thus causing the Authority to lose millions of dollars. Mr. Davies testified that the Authority entered into this contract with Met–Ed in 1986. (N.T. at 17). However, we note that the Authority did not apply for the zoning permit until May 1987 and it was not issued until November 1987.

In 1986, when the contract between Met–Ed and the Authority was entered into, the Authority did not know if the permit would be granted. To hold the Appellants responsible for a contract entered into a year before the permit was even granted is beyond the purpose of a bond. Additionally, at the time of the June 2, 1988 hearing, the Authority was still in the process of completing applications for permits from various state agencies. (N.T. at 45–48). Possible delays in receiving permits from these agencies cannot be attributable to the Appellants.

Appellants' arguments that the Authority failed in its burden of meeting the objective criteria of the zoning ordinance and that their evidence outweighed the evidence of the Authority as to the subjective factors of health, safety and welfare of the community are certainly justiciable issues and are not frivolous or for the purpose of delay.

These issues were properly brought before the Board, the trial court and us. Although Appellants fail on the merits of these arguments, the trial court erred by imposing a $3 million bond.

Accordingly, we affirm the trial court's order affirming the Board's grant of a permit to the Authority, but reverse the trial court's imposition of a $3 million bond.

PALLADINO, J., dissents as to the reversal of the imposition of bond.

## ORDER

AND NOW, this 24th day of May, 1989, the order of the Court of Common Pleas of Monroe County at No. 1189 C.D.1988 is hereby affirmed and the order of the Court of Common Pleas of Monroe County at No. 1507 C.D.1988 is reversed.