# Comly Appeal

*John P. Knox,* for Albert M. Comly.

*Thomas M. Garrity,* for Springfield Township.

*James C. Everett,* for Thomas Kramer and Robert James, intervenors.

*Frank W. Jenkins,* for Springfield Township Zoning Hearing Board.

OTT, *J.,* November 26, 1990—This case involves an appeal by Albert M. Comly from an order of the Zoning Hearing Board of Springfield Township, dated January 12, 1990, denying a special exception for the construction of 10 condominium units on a vacant parcel of land to the rear of the West Mill Inn.[1]

The proposed condominiums are to be built on an L-shaped parcel whose only frontage is a driveway on the northerly side of Weiss Avenue. The parcel is essentially landlocked, surrounded by the West Mill Inn parking lot to the east and residential properties

---

1. The application before the Zoning Hearing Board also sought a second special exception and two variances. The board's actions with respect to those issues were not addressed in this appeal and will not be discussed in this opinion.

to the north, south and west. The parcel measures 50,000 square feet. For purposes of clarity we include as an exhibit a site plan of the area in question, prepared for Mr. Comly by the architectural firm of Lynch Martinez of Plymouth Meeting, Pennsylvania.

The parcel is located in a C-Residential Zoning District, in which the construction of multifamily dwellings by special exception is permitted pursuant to section 114-7.D of the Springfield Township Zoning Ordinance which provides as follows:

"§114-71. Permitted Uses.

"A building may be erected, altered or used and a lot or premises may be used for any of the following purposes and no other: . . .

"D. A multiple dwelling, when authorized as a special exception; provided, however, that the following requirements must be met:

"(1) A lot area of not less than 5,000 square feet per family shall be provided.

"(2) The building shall not exceed:

"(a) Forty percent of the lot area for one-story buildings.

"(b) Twenty-five percent of the lot area for two-story buildings. . . .

"(3) The open space shall be suitably landscaped with grass, gardens, trees or other landscape material to conform with the requirements of section 95-11 of the Springfield Township Subdivision and Land Development Ordinance of 1950, as amended, to insure the preservation, insofar as practicable, of existing trees and to provide an attractive natural setting. . . ."

On July 31, 1989 Mr. Comly filed an application seeking to build a two-story, 10-unit condominium on the property behind the West Mill Inn. Hearings on this matter were held before the Zoning Board on

August 21, 1989, September 18, 1989 and November 6, 1989. The board rendered its written decision and order on January 12, 1990, denying applicant's request for a special exception, stating: "[T]he proposed development is not consistent with the character and type of development in the area and does not provide for the harmonious and orderly development of the zoning district involved."[2]

Mr. Comly filed a timely notice of appeal with regard to the special exception. Springfield Township intervened, as did six named property owners whose lands abut the parcel which is the subject of this action. Argument on the appeal was held September 21, 1990, before the Honorable Richard S. Lowe and the Honorable Stanley R. Ott sitting en banc. No additional evidence was taken by this court. On September 24, 1990, we issued an order sustaining the appeal of Albert M. Comly and reversing the denial of the special exception by the Zoning Hearing Board. The six individual intervenors and Springfield Township have appealed to Commonwealth Court.

## ISSUES

Appellants' statement of matters complained of, filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), raises two issues: (1) Did the court err by reversing the Zoning Hearing Board of Springfield Township and its determination that the proposed multidwelling development is not consistent with the character and type of development in the area and does not provide for the harmonious and orderly development of the zoning district involved? (2) Did the court err by reversing a discre-

---

2. Decision and order of January 12, 1990, at 15.

tionary decision particularly suited to review by the Zoning Hearing Board which involved no question of law?

## DISCUSSION

### Scope of Review

When the trial court does not receive additional evidence, its scope of review is limited to determining if the zoning board committed a manifest abuse of discretion or an error of law. *Lebowitz v. Zoning Board of Adjustment of the City of Pittsburgh*, 87 Pa. Commw. 200, 486 A.2d 1061 (1985). A zoning hearing board abuses its discretion when its essential findings of fact are not supported by substantial evidence. *Epting v. Marion Township Zoning Hearing Board.* 111 Pa. Commw. 389, 523 A.2d 537 (1987), *allocatur denied* 518 Pa. 628, 541 A.2d 1139 (1988).

### Reversal of the Zoning Hearing Board's Order

The important characteristic of a special exception is that it is a conditionally permitted use, legislatively allowed if the objective standards of the ordinance are met. *Abbey v. Zoning Hearing Board,* 126 Pa. Commw. 235, 559 A.2d 107 (1989). The governing body of Springfield Township has already decided that multifamily dwellings are permitted uses in a C-Residential Zoning District. As stated in finding- of fact no. 9, the board found that Mr. Comly's proposal met the objective criteria for a special exception:

"(9) The proposal for the multifamily/condominium development would provide 10 separate condominium units to be sold in fee and would satisfy

the requirements in section 114-71.D with 5,000 square feet lot area per family. Based upon the testimony of the applicant, the remaining lot to be converted for the condominium unit was 50,000 square feet in size."[3]

The board's denial of the special exception is based solely on the conclusion by the board that certain general conditions set forth in section 114-165.A(1) and (2) of its ordinance were not met. The code section states:

"§114-165. Special Exceptions and Variances.

"A. In any instance where the Zoning Hearing Board is required to consider a request for variance of special exception, the Zoning Hearing Board must determine that the following standards and criteria are met before granting the request:

"(1) The size, scope, extent and character of the special exception or variance requested is consistent with the comprehensive plan of the township and promotes the harmonious and orderly development of the zoning district involved.

"(2) The proposed change or modification is consistent with the character and type of development in the area surrounding the location for which the request is made and will not substantially impair, alter or detract from the use of surrounding property or the character of the neighborhood in light of the zoning classification of the area affected; the effect on other properties in the area; the number, extent and scope of non-conforming uses in the area; and the presence or the absence in the neighborhood of conditions or uses which are the same or similar in character to the condition or use for which the applicant seeks approval."

The board, in the only part of its decision that refers to the reason why the special exception was

_____

3. Decision and order of January 12, 1990, at 4.

denied, states that the multidwelling use does not meet the requirements of section 114-165 because multifamily units would be built "immediately adjacent to a neighborhood of single-family dwellings, some of historic import and comprising a closely knit community."[4] The only place in the board's findings of fact that treats the issue is finding of fact no. 17, where the board states:

"Their testimony (the protestants') was aimed at establishing that the applicant was trying to shoehorn too many units into a small tract of ground and that such a development was completely inconsistent with the character and type of development in the surrounding area."[5]

In its order the board states that the multifamily special exception is denied, "the record having established that such a development is inconsistent with the character and type of development in the area."[6]

Once an applicant brings his proposal within the provisions of the special exception, he has established a prima facie case. *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A.2d 587 (1957). Because the board's finding of fact no. 9 states that Mr. Comly has complied with the requirements of section 114-71, he is entitled to the exception as a matter of law unless the objectors are able to come forth with substantial evidence that the aforementioned general conditions stated in section 114-165.A(1) and (2) were not met. See *Bray v. Zoning Board of Adjustment,* 48 Pa. Commw. 523, 410 A.2d 909 (1980). Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Abbey,*

---

4. Decision and order of January 12, 1990, at 13.
5. Decision and order of January 12, 1990, at 5.
6. Decision and order of January 12, 1990, at 16.

*supra,* 126 Pa. Commw. at 239, 559 A.2d at 109. Objectors cannot meet their burden by merely speculating as to possible harm, but instead "must show a high degree of probability that the proposed use will substantially affect the health and safety of the community." *Tuckfelt v. Zoning Board of Adjustment,* 80 Pa. Commw. 496, 502, 471 A.2d 1311, 1314 (1984). Since multifamily dwellings are a permitted use on the Comly property, objectors have the heavy burden of proving that the impact of the planned units would be greater than would normally be expected from that type of use and that this use will pose a substantial threat to health, safety and welfare. *Kern v. Zoning Board of the Township of Tredyffrin,* 68 Pa. Commw. 396, 449 A.2d 781 (1982).

After a careful review of the record in this matter, the court determined that the Zoning Hearing Board abused its discretion in finding that the objectors had presented sufficient evidence to warrant the denial of a special exception. During the hearings, the impact of the development on traffic was the only issue related to health and safety which the neighbors raised. Nevertheless, the board's finding of fact no. 13 clearly shows that it found in favor of Mr. Comly on this issue.

"(13) Applicant presented the testimony of James Shuster, President of Valley Forge Laboratories, who was qualified as an expert in traffic statistics and controls. Mr. Shuster presented Exhibit 'D,' a traffic impact study of the area surrounding the subject property, which study concluded that the impact of the additional proposed 10 condominium units and the traffic therefrom would be minimal."[7]

Along with hearing the neighbor's testimony regarding traffic, the board viewed a videotape of the

---

7. Decision and order of January 12, 1990, at 4.

traffic conditions at the intersection of Weiss Avenue and Bethlehem Pike, prepared by area resident James A. Cosco. Based on the videotape, which lasted 35 minutes, the board reached its finding of fact no. 16 which states:

"(16) The visual evidence clearly established the volume of traffic on Bethlehem Pike, but provided no reason to dispute the expert's report that the traffic generated by 10 additional residential units would have a minimal impact on the traffic congestion at the intersection."[10]

Inasmuch as health and safety were not issues, the board bottomed its decision solely on the character of the neighborhood and the type of development in the surrounding area. Because a condominium is a permitted use for the parcel in question, the board would have had to reach this decision based on evidence that there was more than a mere speculation of harm. *Foster Grading Company v. Venango Township Zoning Hearing Board,* 49 Pa. Commw. 1, 412 A.2d 647 (1980). Concern for the appearance of the neighborhood appears to have motivated, in part, the board's decision. In its discussion the board stated:

"There seems to be little doubt that the area of the applicant's property where the proposed condominium structure would be built is immediately adjacent to a neighborhood of single family dwellings, some of historic import and comprising a closely knit community."[11]

Thomas Hartnett, one of the six named intervenors, testified that certain structures on West Mill Road were between 90 and 170 years old. (N.T. vol. I, pp. 202-4.) However, no expert testimony was offered regarding the historic nature of the homes or

10. Decision and order of January 12, 1990. at 5.
11. Decision and order of January 12, 1990. at 5.

their architectural value. More importantly, no substantial evidence was offered that the development would detract from the appearance of the surrounding structures. The fact that certain West Mill Road property owners are displeased that the view from their rear windows will include newly constructed homes (N.T. vol. II, pp. 204-6) is not sufficient reason to deny a statutorily permitted use.

Because the board specifically cited the "historic import" of some of the surrounding buildings, we note the testimony by architect Raymond Lynch that the style of the condominium units would be harmonious with the existing structures:

"The architecture, the appearance of the proposed project is to be in keeping with the architecture of the houses, the residences, in the neighborhood. The proposed materials would be masonry, stucco, and shingle roof, sloped roof, which is, again, similar to what is around." (N.T. vol. I, pp. 27-8.)

"The intentions were, as we described, to break the scale down as much as we can to keep the houses at two stories, as we mentioned, so that the height of the roofs would not protrude above the existing silhouettes of the existing houses." (N.T. vol. I, p. 101.)

Our review of the record also indicates that the protestants failed to provide substantial evidence that the proposed development would alter the character of the neighborhood. While residents expressed pride in the place they live, they offered no evidence that this 10-unit multifamily dwelling would cause serious harm to their quality of life. Moreover, they failed to show that the effects of this particular development would be any more adverse than those of any other multifamily unit development. See *Kern, supra,* 68 Pa. Commw. at 402, 449

A.2d at 784. Regarding the character of the area, Ms. Amy Fite, a named intervenor, testified as follows: "We on Weiss Avenue have managed to maintain the uniqueness of our warm and concerned neighborhood. . . ." (N.T. vol. III, p. 252.)

Ms. Nancy Nowell stated:

"It is the kind of neighborhood where everyone looks out for each other and takes care of each other, and I guess I want to stress that. . . . We really want to keep our neighborhood from becoming a bunch of houses just like so many other neighborhoods have become in urban areas, and we want to protect what we have." (N.T. vol. III, p. 255.)

While such statements might have caused the board to empathize with the neighbor's concerns, they are of no persuasive value in a proceeding where protestants bear the burden of producing substantial evidence of harm. Although 19 neighbors testified about their concerns, we are reminded that the Commonwealth Court found that a petition signed by 700 citizens did not demonstrate a strong degree of probability that substantial injury would occur. *Abbey, supra,* 126 Pa. Commw. at 242, 559 A.2d at 110-1.

Because the protestants failed to carry their burden of proof, the board erred in failing to grant Mr. Comly a special exception for a development which met the objective criteria for a special exception under section 114-71 (Permitted Uses).

### Discretionary Issue of Character and Type of Development

When a trial court takes no additional evidence, a zoning hearing board is the sole judge of the credibility of witnesses and the weight to be given to their

testimony. *Muse v. Zoning Hearing Board of Ben Avon Borough,* 52 Pa. Commw. 287, 415 A.2d 1255 (1980). The board also resolves conflicts in testimony. *Lower Allen Citizens Action Group Inc. v. Lower Allen Township Zoning Hearing Board,* 93 Pa. Commw. 96, 500 A.2d 1253 (1985). However, the *Allen* court held that when the board's findings are not supported by substantial evidence, the trial court is not bound by them. While we agree that a zoning board is particularly suited to determining the character and type of development in an area, we note that such determination can only be made according to the evidentiary rules established by the Commonwealth Court. Where protestants object to a proposal based on general detrimental effect or a general policy concern, they bear the initial evidence presentation duty and persuasion burden. *Bray,* 48 Pa. Commw. at 531, 410 A.2d at 913. In this case, the board chose to ignore that the burden of proof and persuasion were on the protestants, once the applicant demonstrated that his plan met the objective requirements for a special exception. In so doing, the board committed a clear abuse of discretion. The decision of the board denying a special exception for the construction of multifamily dwellings on the parcel behind the West Mill Inn was properly reversed.