**Edwin A. SZEWCZYK, Sr., Edwin A. Szewczyk, Jr., and Tamra M. Szewczyk, husband and wife, and Richard J. Aul**

v.

**ZONING BOARD OF ADJUSTMENT OF the CITY OF PITTSBURGH and Joan Lagatutta**

**Edwin A. Szewczyk, Sr. and Richard J. Aul, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Oct. 31, 1994.

Decided Jan. 26, 1995.

Robert L. Federline, for appellants.

William R. Sittig, Jr., for appellee Joan Lagatutta.

Before McGINLEY and PELLEGRINI, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Edwin A. Szewczyk, Sr., Edwin A. Szewczyk, Jr., Tamra M. Szewczyk and Richard J. Aul (Objectors) appeal from an order of the Court of Common Pleas of Allegheny County that affirmed the City of Pittsburgh's Zoning Board of Adjustment's (ZBA) approval of Joan Lagatutta's (Landowner) request to construct a forty by forty foot enlargement of a nonconforming structure to expand a nonconforming use. We reverse.

The existing structure consists of a three-story building with a full basement. The first floor is occupied by a restaurant/bar and the second and third floors contain residential dwelling units. The basement/cellar level contains the kitchen which services the restaurant/bar.

Landowner petitioned for a special exception to erect a one-story structure that would enlarge the existing nonconforming structure to accommodate an extension of the nonconforming restaurant/bar use. The proposed enlargement would be an extension onto property located adjacent to the present three-story building. The proposal also provides for eighteen outdoor parking stalls. Landowner also requested a front yard variance that would allow a change from a twenty-five foot setback to a zero foot setback, and the recognition of the legal existence of four dwelling units on the second and third floors of the structure.[1]

After hearings, the ZBA concluded that Landowner had met her burden of proof for the grant of the special exception subject to two conditions concerning parking and signs. The ZBA also granted the variance for the front yard setback and approved the existence of the four dwelling units on the two upper floors.

Objectors appealed and the trial court, without taking evidence, affirmed in part and reversed in part the ZBA's decision. The trial court, as did the ZBA, indicated that the

enlargement of the nonconforming structure is governed by Section 909.06(b)(17) of the Pittsburgh Zoning Ordinance (Ordinance) which, in pertinent part, provides:

(17) Rehabilitation and/or *limited enlargement of a nonconforming structure and extension of the use therein,* in any district other than RP, CP, or AP, under the following prerequisite conditions:

. . . .

G. The total cost of all improvements to the structure under this provision, shall not exceed fifty percent (50%) of the assessed valuation of the *structure* proposed to be improved prior to the first such improvement under this provision, as determined by the Superintendent; and

H. The aggregate gross floor area of extensions and additions to the structure under this provision shall not exceed twenty-five percent (25%) of the *gross floor area of the structure* on the date of the first application.

(Emphasis added.)

Objectors argued that the ZBA had erred by improperly interpreting the language of the Ordinance relating to: (a) the permissive amount allowable in terms of costs relating to assessed value, in part based on the acceptance of Landowner's expert testimony rather than Objectors' expert testimony; (b) the 25% gross floor area expansion allowed; and (c) the required number of parking spaces. Objectors also argued that the ZBA erred in determining that no detrimental impact on the neighborhood would result from the grant of the expansion and that Landowner was entitled to use only three of the four rental units on the second and third floor. Objectors did not challenge the grant of the front yard variance.[2]

Initially, the trial court indicated that because the ZBA is responsible for credibility determinations, if based on substantial evi-

---

1. In a prior case before the ZBA, Landowner received acknowledgment that three legally existing nonconforming dwelling units occupied the space on the second and third floors of the structure.

2. Objectors also contended that the ZBA erred in granting Landowner permission to expand over property not connected with the nonconforming restaurant/bar use. The trial court noted that this issue was not raised before the ZBA and, therefore, could not be raised for the first time on appeal.

dence, the ZBA's acceptance of the estimate from Landowner's expert concerning costs of the addition cannot be overturned on appeal. The trial court then reviewed the evidence presented to the ZBA by Landowner concerning the cost of the enlargement, noting that the builder hired by Landowner estimated the cost of the addition to be $29,200 and that the total assessed value of the property was $60,000. The trial court also concluded that the value of the land is a part of the assessed value for purposes of Subsection G, reasoning that "[a] structure as a matter of definition requires a permanent place on the land, and its value can be greatly enhanced or diminished depending on its location." (Trial court opinion, pp. 3–4.) Thus, the trial court concluded that Landowner met the Subsection G requirement.

In regard to the issue raised concerning Subsection H, Objectors argued that only the gross floor area devoted to the nonconforming use may be considered to determine whether the expansion falls within the 25% limit expressed in Subsection H. The trial court cited the specific language of Subsection H which refers to the gross floor area of the *structure*, not just the gross floor area devoted to the use to be expanded, and held that the ZBA had correctly calculated the percentage of the expansion as it related to the gross floor area requirement in Subsection H.[3] Thus, the trial court affirmed the ZBA's decision that Landowner met her burden under Subsection H.

As for the issues concerning the general detriment to the neighborhood and the al-

leged parking problems, the trial court concluded that Objectors had not met their burden of proof and relied on the ZBA's findings, noting that the findings are supported by substantial evidence and that the plan meets the requirements for parking under Section 909.06(b)(17)(D) of the Ordinance.[4]

Lastly, the trial court reviewed the testimony given about the four rental units, concluding that the use of one unit had been abandoned and could not be revived, thus, leaving three units entitled to nonconforming status.

Objectors now appeal to this court,[5] arguing as they did to the trial court that the ZBA erred: (1) in accepting Landowner's cost estimate for the addition rather than their expert's estimate; (2) by including the assessed value of the land together with the assessed value of the structure to determine the assessed value of the property for the 50% comparison figure required by Subsection G; (3) in using the gross floor area of the entire structure in calculating whether the expansion fits within the 25% limit set out in Subsection H; and (4) in not denying the special exception because of detriment to the neighborhood due to the increased traffic and parking problems. Objectors also contend that Landowner has no right to expand a nonconforming use across property not originally associated with the nonconforming use.

Initially, we note that "the applicant [for a special exception] has both the persuasion burden and the initial evidence

---

**3.** The trial court also discussed its acceptance of the ZBA's inclusion of the basement/cellar in the calculation for gross floor area. It recognized that according to Section 903.02(f) of the Ordinance a basement is to be included in the measurement of the gross floor area of a structure, but that a cellar is not included. Both basement and cellar are defined in the definition section of the Ordinance as follows:

'Basement' means a portion of a building partly below ground and having more than one-half of its height above the level of the adjoining ground.
'Cellar' means a portion of a building having one-half or more of its height below the average level of the adjoining ground.
Although there is testimony indicating that the lowest level of the building is below ground and if strictly construed with the definitions could be

deemed a cellar, the ZBA accepted the basement category here based on a prior zoning appeal in which the lowest level of the building was designated as a basement.

**4.** The conditions ordered by the ZBA and affirmed by the trial court require Landowner to pave the parking area, implement a landscaping plan and erect signs designating the area as parking for patrons of the restaurant/bar.

**5.** Our scope of review of a decision of a zoning hearing board where a trial court takes no additional evidence is limited to a determination of whether the zoning hearing board abused its discretion or committed an error of law. *Valley View Civic Assoc. v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983).

presentation duty to show that the proposal complies with the 'terms of the ordinance' which expressly govern such a grant." *Bray v. Zoning Board of Adjustment*, 48 Pa.Commonwealth Ct. 523, 526, 410 A.2d 909, 910 (1980). We also must consider that "[t]he important characteristic of a special exception is that it is a conditionally permitted use, legislatively allowed if the standards are met." *Id.* at 527, 410 A.2d at 911. After reviewing the record, we conclude that Landowner has not met these burdens.

■ We first address Objectors two-pronged argument concerning the permissible costs allowed to be expended pursuant to Subsection G. Their first argument is that their expert's estimate of the total cost of the improvements ($40,000.00) should have been accepted by the ZBA rather than the estimate provided by Landowner's expert ($29,200.00). This contention goes to the credibility of witnesses and is beyond our scope of review. When a trial court takes no additional evidence, the zoning hearing board is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Abbey v. Zoning Hearing Board of the Borough of East Stroudsburg*, 126 Pa.Commonwealth Ct. 235, 559 A.2d 107 (1989). The board resolves conflicts in testimony and is free to reject even uncontradicted testimony it finds lacking in credibility. *Id.* We are bound by these determinations, if we conclude that the ZBA's findings are based on substantial evidence. Our review of the testimony reveals that substantial evidence exists in the record upon which the ZBA could base its findings concerning costs of the expansion.

■ The second prong of Objectors' cost-of-expansion argument centers on the interpretation of the phrase "assessed value of the structure" as used in Subsection G. The ZBA used the figure of $60,000.00, which is the assessed value of the property including both the assessed value of the structure and the assessed value of the land. Despite the reasons given by the trial court for affirming the ZBA's use of the $60,000.00 figure, the plain language of the Ordinance indicates that the assessed value of the *structure* is to be used to determine the allowed value of the expansion. *See Spahr–Alder Group v. Zoning Board of Adjustment of the City of Pittsburgh*, 135 Pa.Commonwealth Ct. 561, 581 A.2d 1002 (1990). The assessed value of the structure alone is $51,200.00; therefore, the total cost of the improvements is limited to $25,600.00. The $29,200.00 estimate provided by Landowner clearly exceeds this amount. Thus, the ZBA erred in concluding that Landowner met her burden of proving that she complies with Subsection G.

We next address Objectors' argument that the ZBA erred in determining that the gross floor area expansion met the 25% gross floor area requirement set out in Subsection H. Citing *R.K. Kibblehouse Quarries v. Marlborough Township Zoning Hearing Board*, 157 Pa.Commonwealth Ct. 630, 630 A.2d 937 (1993), Objectors contend that the ZBA cannot use the size of the property not devoted to the nonconforming use to calculate the dimensions of the expansion; it could only use the portion of the property devoted to the nonconforming use for the 25% calculation. Although Objectors correctly state the holding in *Kibblehouse*, their reliance is misplaced. The issue in *Kibblehouse* concerned a nonconforming use of land as a quarry and a request for the expansion of the nonconforming use over land not carried on within a structure. Additionally, the ordinance in *Kibblehouse* was silent as to expansion over land, so the question dealt with whether the 25% increase that applied to expansions within a structure could be applied to an expansion not within a structure.

■ Here the nonconforming use is contained within a structure. Moreover, the Ordinance specifically sets forth that the gross floor area of the *structure* is to be used as the starting point and that the expansion cannot be more than 25% "of the gross floor area of the structure." [6] Therefore, based on the evidence presented, the ZBA used the measurements of all four floors including the

---

**6.** Structure as defined in the Ordinance "means anything constructed or erected, the use of which requires, directly or indirectly, a permanent location on the land."

"basement,"[7] arriving at a total gross floor area for the entire structure of 7,636 square feet, with the 1,600 square foot expansion equaling 21% of the total gross floor area.

In reviewing this issue the trial court concluded that the language of the Ordinance controlled. We agree. A phrase indicating that only that portion of the structure that houses the nonconforming use is not part of the language of Subsection H nor can it be appended to that section. Therefore, the size of the gross floor area of the structure containing the nonconforming use is not controlling.

■ However, in reviewing the ZBA's calculation of the gross floor area of the structure to enable the further calculation to determine the allowable extent of the expansion by no more than 25%, we conclude that an error was made. The ZBA erred in relying on its designation in the earlier zoning appeal that the lower floor was a "basement" and in including the measurement of that floor in its calculation of gross floor area. A review of the decision in the prior zoning appeal in which the "basement kitchen" was allowed as a nonconforming use provides no basis for the ZBA's "basement" designation in the present case. Nothing in that prior decision evidences that the basement/cellar dichotomy was ever at issue; thus, reliance by the ZBA on that prior decision is misplaced. The only evidence in the record concerning the status of the basement/cellar is Landowner's admission that the lower floor is entirely below street level; hence, the Ordinance's definition of "cellar" controls and, pursuant to Section 903.02(f), that level cannot be included in the measurement of the gross floor area of the structure. The ZBA's calculation of the gross floor area of the structure was in error when it included the "cellar" area; only the total measurement of the first, second and third floors can be included to determine the gross floor area of the structure, with 25% of that measurement giving the extent allowable for the expansion.[8] Because the measurement of the expansion proposed by Landowner exceeds the amount allowed under Subsection H, we conclude that the ZBA incorrectly determined that Landowner met this portion of her burden.

■ Next Objectors argue that Landowner has not met the parking provisions of the Ordinance. Objectors contend that in addition to the spaces required for the expansion Landowner must also provide parking spaces for the already existing nonconforming restaurant/bar use. The ZBA applied the Ordinance provision that indicates that a restaurant use needs one parking space for every 125 feet of floor area over 2,400 square feet after taking a reduction of 20% of the gross floor area. The calculation as found by the ZBA resulted in a requirement of twelve spaces. Landowner's plan provided for eighteen spaces. Therefore, Landowner has met the parking requirement for the expansion.

The question remains whether Landowner must provide parking for the already existing restaurant/bar use. Although Objectors cite the section of the Ordinance used by the ZBA as outlined above, they contend that the introductory language of Section 989.01 entitled Automobile Parking Space[9] requires the provision of a parking area for the already existing restaurant use when the main structure is enlarged. Objectors' interpretation of this language is incorrect. Nowhere does the Ordinance indicate that parking must be provided for an already existing nonconforming use that predates the present Ordinance. It only sets out specific parking requirements when a structure is initially erected or enlarged, with the number of spaces related to the size of the new structure or the enlargement. Landowner has met the require-

7. See Footnote No. 2, explaining the ZBA's incorporation of prior zoning cases concerning the same property and the nonconforming use of the property.

8. The record shows that the gross floor area of the first, second and third floors equal 5,662 square feet, allowing an expansion of no more than 1,415.5 square feet.

9. Section 989.01 states that "[t]here shall be provided, at the time of the erection of any main structure or at the time any main structure is enlarged in capacity, minimum off-street automobile parking space including required number of parking stalls plus not less than twenty-five (25%) in total area for adequate provision of ingress, egress and general circulation."

ments for parking and the ZBA's decision in this regard is affirmed.

■ Objectors next argue that the ZBA erred in its determination that they did not carry the burden of proving that the expansion would have a detrimental impact on the neighborhood. As stated above, the court in *Bray* determined that an applicant has both the duty of presenting evidence and the burden of persuasion that its proposal complies with all objective requirements of the ordinance. The objectors have both the duty of presenting evidence and the burden of persuasion that the use will have a generally detrimental effect on health, safety and welfare or will conflict with general policy expressions contained in the ordinance. *Id.* Because we have conclude that Landowner failed to meet all specific requirements in the Ordinance, the burden did not shift to Objectors to show that the granting of the special exception would be detrimental to the health, safety and welfare of the community.

■ Although we need not reach this issue, our review of the record indicates that the trial court correctly ruled that Objectors did not carry their burden. Objectors must show that the impact of the proposed expansion would be greater than would normally be expected and would pose a substantial threat to the health, safety and welfare of the community. *Abbey.* They must provide "*evidence* that there is more than a *mere speculation* of harm." *Id.* 126 Pa.Commonwealth Ct. at 242, 559 A.2d at 110 (emphasis in original).

■ Lay testimony by Objectors showed their concerns for the safety of children in the neighborhood, increased traffic congestion, an increase in crowds to an already crowded area, and a lowering of property values. This evidence showed the Objectors' displeasure with the proposed expansion, but did not demonstrate a strong degree of probability that substantial harm would occur. Thus, the trial court correctly affirmed the ZBA's conclusion that Objectors did not prove detriment to the health, safety and welfare of the neighborhood.

We also note, as did the trial court, that the issue concerning whether Landowner could expand her nonconforming use over property not associated with the nonconforming use was waived. It was not raised before the ZBA and could, therefore, not be raised before the trial court or on appeal to this Court. *See* Pa.R.A.P. 302(a). *Spencer v. Zoning Hearing Board of Rockland Township,* 111 Pa.Commonwealth Ct. 111, 533 A.2d 497 (1987).

Based on the foregoing analysis, we reverse the trial court's order affirming the grant of a special exception.

### *ORDER*

NOW, January 26, 1995, the order of the Court of Common Pleas of Allegheny County, dated March 25, 1994, at No. S.A. 2466–1993, is reversed.