**DIRIGO BANK AND TRUST COMPANY**

v.

**MAINE BUREAU OF BANKING et als.**

Supreme Judicial Court of Maine.

April 2, 1980.

Lipman, Parks, Livingston, Lipman & Katz, P. A., Sumner Lipman, John M. Parks, orally, Augusta, for plaintiff.

Preti, Flaherty & Beliveau, Severin Beliveau, orally, Augusta, for Northeast Bank.

Peter B. Bickerman, Asst. Atty. Gen., orally, Augusta, for Maine Bureau of Banking.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

GLASSMAN, Justice.

On June 6, 1978, the appellee, Northeast Bank of Lewiston and Auburn (Northeast), applied to the Superintendent of the Maine Bureau of Banking for permission to establish branch offices in Augusta and Waterville by acquiring the assets and assuming the deposit liabilities of the Econo-Bank branches of the appellee, Livermore Falls Trust Company (Livermore). The assets of these two branches represented approximately fifteen percent of Livermore's total assets. Livermore filed with the Superintendent on July 14, 1978 a corresponding application to close the Econo-Bank offices in the two cities, conditioning this application on the Superintendent's approval of the Northeast application. On September 19, 1978, the appellant, Dirigo Bank and Trust Company (Dirigo), which maintained its main office within one-quarter mile of the Econo-Bank Augusta office, filed a request for a public hearing on the proposed transfer. Following hearing and investigation, the Superintendent issued two separate orders on March 5, 1979 which approved the applications of Northeast and Livermore.

Pursuant to M.R.Civ.P. 80B and 5 M.R.S.A. § 11002, Dirigo sought review of these orders in the Superior Court, Kennebec County. On June 26, 1979, the Superior Court entered judgment affirming the orders of the Superintendent. Dirigo appeals from this judgment, arguing that the Superior Court erred because Title 9–B of the Maine Revised Statutes prohibits the Superintendent from approving a transfer of less than all or substantially all of a bank's assets. We affirm the judgment of the Superior Court.

Section 355 of the Banking Code provides: "A financial institution organized under the laws of this State may acquire *all or substantially all of the assets* of, or assume the liabilities of, any other financial institution authorized to do business in this State  .  . ." 9–B M.R.S.A. § 355. (Emphasis added). The section then enumerates detailed procedures, conditions and limitations governing these major acquisitions. Section 355 is a part of Chapter 35 of Title 9–B which by its terms applies only to mergers, consolidations and substantial acquisitions. *See id.,* § 351(1).

The appellant Dirigo asserts that the acquisitions permitted by Section 355 are the only type of acquisitions authorized by the Banking Code. Because the proposed transfer would involve only approximately fifteen percent of Livermore's assets, Dirigo contends that neither Section 355 nor any other provision of the code allows the transaction. Dirigo maintains that Chapter 33, although permitting and regulating the opening and closing of branch banks, neither permits nor regulates branch applications involving the establishment of a branch bank through the transfer of a bank's assets. It asserts that Chapter 33 governs only the instances where a single financial institution uses its own assets to establish a branch bank. The thrust of Dirigo's argument is that Section 355 is intended to prohibit acquisitions involving less than all or substantially all of the assets of a financial institution.

Dirigo's position is supported neither by the plain meaning of the regulatory scheme nor by public policy. The manifest purpose of Chapter 35 is to regulate those transactions having a disruptive and possibly anticompetitive impact on the banking industry. This objective is not advanced by prohibiting transfers of assets between financial institutions which do not involve all or substantially all of the assets of one of the institutions. Such a construction of Section 355 would prohibit financial institutions from acquiring and disposing of assets unless they transferred all or substantially all of their assets. This result would be inconsistent with the express policy of the code "to assure the strength, stability and efficiency of all financial institutions [and] to assure reasonable and orderly competition, thereby encouraging the development and expansion of financial services advantageous to the public welfare . . . ." 9–B M.R.S.A. § 111. Dirigo's interpretation would also defeat other purposes of the code such as to afford financial institutions flexibility to develop consistent with the public interest and to encourage statewide branching. See Report of the Governor's Banking Study Advisory Committee 1–8, 12–13 (1974).

Northeast and Livermore complied with all the procedural requirements of Chapter 33. That chapter expressly permits the Superintendent to consider branch applications jointly, 9–B M.R.S.A. § 336(2), and does not forbid the simultaneous closing and opening of a branch bank through acquisition of assets. The Superintendent complied with 9–B M.R.S.A. §§ 336(4) and 253 by expressly finding that the transfer served the public convenience and advantage.

The entry is:

Appeal denied.

Judgment affirmed.