[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has taken this appeal from a decision of the defendant zoning board of appeals on July 24, 1990, denying his application for a special exception to construct a children's day care center on a parcel of land known as 45 Loper Street in the town of Southington.
The plaintiff offered evidence to show that he acquired title to the property on April 4, 1989, and that he has been the sole owner since that time. Accordingly, the court finds he has maintained the "specific, personal and legal interest in the subject matter" which is required for him to establish his aggrievement throughout the course of this appeal. Primerica v. Planning and Zoning Commission, 211 Conn. 85, 94.
The proposed site is located approximately four hundred feet east of the intersection of Loper Street with Queen Street in an R-20/25 residential zone. Under sections 3-01.31A and 3-02.31A of the zoning regulations, the zoning board of appeals "may, after public hearing and subject to appropriate safeguards in harmony with the general purpose of these Regulations, grant a special exception for . . . [c]hild day care services" in any R-20/25 zone.
Shortly after the plaintiff filed his application, the town planner, in a memorandum to the board (Record, Exhibit E), noted that "[t]he site and Loper Street are very steep (street is 12%) [and this] could cause certain short term winter driving difficulties — may delay the pickup or dropping off of ; children during certain hours." He also recommended that additional parking should be provided as well as sidewalks on both sides of the parking area.
At the first hearing on the application, which was held on July 10, 1990, counsel for the plaintiff stated that the proposed facility would be operated as a "Kinder-Care" child care center designed to accommodate 120 to 140 children and that the hours for dropping them off and picking them up would be staggered over three hours in the morning and three hours in the afternoon. Exhibit N, p. 15. He also pointed out that a traffic study had concluded that the sight distances for traffic on Loper Street were adequate and did not pose a traffic hazard in that respect. Id. 27.
Residential property owners on Loper Street expressed strong opposition to the proposal based on their concerns that the intensive business uses along Queen Street would be extended into the abutting residential area and that the already existing traffic congestion on Queen Street and its feeder streets CT Page 1247 would become greater as a result of the proposed use. Concerns were also expressed about the steep grade of Loper Street, particularly under winter driving conditions, notwithstanding the fact that it had recently been widened and improved in order to handle a larger volume of traffic. Exhibit K.
At the second hearing on the application, which was held on July 24, 1990, the applicant's attorney stated that the parking area had been redesigned and expanded as recommended by the town planner and the board so as to provide "a much better traffic flow and much greater safety." Exhibit O, p. 60. The town planner stated that "they have taken care of the traffic problems", and that both he and the chief of police were satisfied that the traffic patterns generated by the proposed use would not constitute a safety problem. Id. 60-62.
At the conclusion of the hearing, the board, without any discussion, voted three to two to deny the plaintiff's application giving as its reasons "Hazardous location and not harmonious with the neighborhood" Id. 75. Michael Clynes, the only member of the board who explained his vote, stated that he felt that "this location for a day care center is a very poor one . . ., that the people in the neighborhood do not want it and I don't think we should force it down their throats [and] that we should stop putting up day care centers like they were pizza restaurants [which is] the way they seem to be going up in Southington." Id.
A special exception allows a property owner to put his property to a use which the regulations expressly permit under conditions specified in the zoning regulations themselves. Huhta v. Zoning Board of Appeals, 151 Conn. 694, 697. The board acts in an administrative capacity when it considers an application for a special exception, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the "conditions necessary to protect the public health, safety, convenience and property values" are satisfied section 8-2 of the General Statutes. A. P. W. Holding Corp. v. Planning and Zoning Board, 167 Conn. 182, 185.
It is the zoning regulations, and not the board, that determine what uses may be allowed as special exceptions. WATR, Inc. v. Zoning Board of Appeals, 158 Conn. 196, 200. The board Page has no discretion to deny a special exception if the standards imposed by the regulations are met and the conditions referred to in the statute are satisfied. Daughters of St. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53, 56.
When a zoning authority has stated the reasons for its CT Page 1248 action, the reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. Id. The question for the court's determination on appeal is whether the defendant board in denying the plaintiff's application, acted legally and within its discretion, or whether it acted illegally, arbitrarily, or so unreasonably as to have abused its discretion. Benson v. Zoning Board of Appeals,129 Conn. 280, 281.
One of the two reasons given by the board for its denial of the plaintiff's application was that the proposed use was "not harmonious with the neighborhood." The reason stated was apparently based on section 15-05.1 of the Southington zoning regulations which provides that "[t]he nature, location, size, intensity and site layout of the use shall be such that it will be in harmony with the appropriate and orderly development of the area in which it is situated. . .".
Where a zoning ordinance expressly permits a proposed use by special exception, such legislative authorization "supports a presumption that the use is generally in harmony with the neighborhood, and that it will promote the general welfare." 3 American Law of Zoning 3d, section 21.13, at 680-81. An applicant, by showing that the proposed use is permitted by special exception and that it complies with the specific requirements of the ordinance, identifies the proposal as one which the municipal legislative body has determined to be appropriate in the district and therefore presumptively consistent with the health, safety and general welfare of the community. Kern v. Zoning Hearing Board, 449 A.2d 781, 783 ( Pa. Cmwlth, 1982).
This presumption is, of course, not a conclusive one as it would be in the case of an application for site plan approval of a use that is already fully permitted under the zoning regulations, thereby precluding further inquiry into its effect on traffic, municipal services, property values or the general harmony of the district. Cf. TLC Development, Inc. v. Planning and Zoning Commission, 215 Conn. 527, 532-33. The presumption has also been held to be conclusive when applied to a subdivision plan where the plaintiff's land was located in a residential zone and its plan was to use the property for residential purposes. Sowin Associates v. Planning and Zoning Commission, 23 Conn. App. 370,375.
In general, it is in accordance with accepted good I planning principles to allow a use permitted by special exception in a residential zone to serve as a buffer between the residential area and nearby commercial development. Toohey v. Kilday,415 A.2d 732, 736 (R.I. 1980). It is clear from the record in this CT Page 1249 case that the parcel which is the subject of this appeal had been designated as a buffer between commercial and residential zones when the plaintiff constructed a shopping plaza known as "Terry-Pat Commons" which abuts it on the west (Exhibit I; Exhibit N, p. 14), and it should also be noted that board's chairman stated in the course of both hearings that it is good zoning practice to utilize day care centers as buffer zones between residential and commercial zones. Exhibit N, p. 32; Exhibit O, p. 66.
The objectors at the hearings did not dispute the fact that the proposed use would serve as a buffer between the commercial and residential areas (Exhibit N, p. 32) but expressed their concerns that it constituted a private commercial use which would lead to "more commercial business being on the street." Exhibit O, p. 68. The question raised by this aspect of neighborhood opposition to the application is whether those expressions of concern constitute a sufficient evidentiary basis for the board's finding that the proposed use was "not harmonious with the neighborhood."
Where the use of property for day care or nursery school purposes is permitted by the zoning ordinance, the characterization of its use as a business is not the test that may be used in determining whether it will be permitted. Livingston v. Davis, 50 N.W.2d 592, 597 (Iowa, 1951). For the purposes of zoning, day care centers should be treated as community facilities rather than being classified as private business uses, and should be considered to be comparable to elementary or public nursery schools. Three L. Corp. v. Board of Adjustment, 288 A.2d 312, 315 (N.J.Super.Ct. 1972).
Our Supreme Court has broadly construed the term "school" for zoning purposes to include a summer day camp which provided only recreational activities for children, because such uses have an educational purpose and the operation of such a facility is "not ordinarily considered detrimental to the character of a zone primarily intended for residence." Langbein v. Board of Zoning Appeals, 135 Conn. 575, 581. Moreover, the compatibility of day care uses with residential uses has become a matter of statewide zoning policy under section 8-2 of the General Statutes which provides that no municipal zoning regulation "shall prohibit the operation of any family day care home or group day care home in a residential zone."
Conclusory statements made by members of the public without offering any supporting facts that the proposed use would be a detriment to the neighborhood and that the proposed facility would not be in harmony with the surrounding structures are not sufficient to support the board's denial of an application for a special exception. Daughters of St. Paul, Inc. v. Zoning Board of CT Page 1250 Appeals, 17 Conn. App. 53, 69. Accordingly, the court finds that the record does not support the board's conclusion that the proposed use was "not harmonious with the neighborhood."
The other reason given for the board's decision, "hazardous location", is apparently based on section 15-05 of the zoning regulations which provides that any special exception "shall conform to the detailed application of the following [standard] in a manner appropriate to the particular circumstances of such use:"
 15-05.2 The nature and size of the use, the nature and intensity of the operations involved in or conducted in connection with it, its site layout, and its relations to streets giving access to it shall be such that both pedestrian and vehicular traffic to and from the use and the assembly of persons in connection with it will not be hazardous or inconvenient to the predominant character of the neighborhood, or conflict with the normal traffic of the neighborhood, taking into consideration, among other things, convenient routes of pedestrian traffic, particularly street intersections, vehicular turning movements in relation to routes and volumes of traffic flow, sight distances, and adequacy of parking facilities.
The record establishes that the town planner, in his initial report to the board as to traffic, was concerned that the steep grade of Loper Street "could cause certain short term winter driving difficulties [which might] delay the pickup or dropping off of children during certain hours . . .", and recommended the expansion of the parking area and the installation of sidewalks. The town planner informed the board at the second hearing that the plaintiff had "taken care of the traffic problems" and stated that both he and the chief of police were satisfied that the traffic patterns generated by the proposed use would not constitute a hazard.
Neighborhood opposition testimony which is largely speculative and constitutes only subjective expressions of concern for public health and safety is, standing alone, a legally insufficient reason for denying a permit where the CT Page 1251 applicant has satisfied the requirements of the zoning regulations. Condor Corp. v. City of St. Paul, 912 F.2d 215, 223
n. 15 (8th Cir. 1990). Although it is essential that all persons interested in supporting or opposing an application for a special exception be heard and that they should be given a full and fair opportunity to express their views, "it [is] not the function [of the board] to hold a plebiscite on the application." City of Apopka v. Orange County, 299 So.2d 657, 659 (Fla.App. 1974).
The objections of a large number of residents of the neighborhood are not a sound basis for the denial of a special exception because the board should base its determination solely upon the facts which it finds to have been established, instead of upon the wishes of those who appear for or against the granting of the application. 3 Anderson, American Law of Zoning, section 21.28, pp. 744-45. The statement of Michael Clynes by way of explaining his reasons for casting the decisive vote against the plaintiff's application that "the people in the neighborhood do not want it and I don't think we should force it down their throats" strongly suggests that his decision was not based on the merits of the plaintiff's application or on the probative value of the arguments of the objectors but rather on the intensity and cumulative effect of their opposition.
The lay judgments of neighboring property owners on the issue of the effect of the proposed use on traffic conditions have no probative force in the determination of an application for a special exception. Salve Regina College v. Zoning Board of Review, 594 A.2d 878, 882 (R.I. 1991). A zoning board of appeals may not deny a use of property for a private day care center based solely on the unsubstantiated fears of neighborhood residents of heavier traffic and parking problems. Three L Corp. v. Board of Adjustment, 288 A.2d 312, 315 (N. J. Super. 1972).
The fact that a proposed day care use will create an intermittent increase in traffic even though children will be dropped off and picked up at different times is not sufficient, in and of itself, to justify the denial of a use of property which is otherwise lawful. Fisher v. Pilcher, 341 A.2d 713, 717
(Del.Super. 1975). Even where the evidence shows that such a facility will generate traffic patterns not normally created by that type of use, the fact that it will contribute to projected traffic congestion primarily generated by other sources is not a sufficient basis for denying a special exception. Kern v. Zoning Board of Appeals, 449 A.2d 781, 783-84 (Pa. Cmwlth, 1982). An additional reason offered by those opposing the plaintiff's application and articulated by Mr. Clynes in his explanation for his vote is that there was no community need for any more day care centers in Southington. Apart from the fact that the zoning CT Page 1252 regulations impose no such requirement on an applicant, a zoning board may not deny a special exception for a permitted use "on the ground that the applicant has failed to prove that there is a community need for its establishment." Toohey v. Kilday,412 A.2d 732, 735 (R.I. 1980).
For the foregoing reasons, the court finds that the board acted illegally, arbitrarily, and in abuse of its discretion by denying the plaintiff's application because the record does not support the board's decision and the plaintiff has satisfied the standards imposed by the Southington zoning regulations.
Accordingly, judgment is entered sustaining the plaintiff's appeal.
Hammer, J.