506 A.2d 490

Franklin Trenge and Sylvia Trenge, Appellants *v.* Zoning Board of Adjustment of South Whitehall Township, Appellee.

Argued February 4, 1986, before Judges CRAIG and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Thomas J. Calnan, Calnan & Orloski, P.C.,* for appellants.

*Maria C. Mullane,* with her, *Blake C. Marles, Weaver, Mosebach, Piosa, Hixson, Wallitsch & Marles,* for appellee.

OPINION BY JUDGE CRAIG, March 14, 1986:

Franklin Trenge and Sylvia Trenge appeal an order of the Court of Common Pleas of Lehigh County which affirmed the decision of the Zoning Hearing Board of South Whitehall Township denying the Trenges' request for a special exception to operate a home real estate office.

The Trenges reside in South Whitehall Township. Mr. Trenge is a licensed real estate broker trading

under the name of Farmington Real Estate. Mrs. Trenge is a licensed real estate salesperson employed by Farmington Real Estate.

The Trenges filed an application with the Zoning Office of South Whitehall Township requesting that the proposed use of their home as a home real estate office be approved as a special exception under the zoning ordinance of South Whitehall Township, section 12.41(e), entitled Home Occupations and Home Professional Offices.

After a hearing under section 913 of the Municipalities Planning Code,[1] the zoning hearing board denied the request. The board concluded that the Trenges failed to sustain the burden of proving both that their proposed use was within the class eligible for special exception approval and that their proposed use would satisfy the standards and criteria set forth in the zoning ordinance.

In *Bray v. Zoning Board of Adjustment,* 48 Pa. Commonwealth Ct. 523, 526, 410 A.2d 909, 910-11 (1980), we stated:

> As to special exceptions, our cases have repeatedly made clear that the applicant has both the persuasion burden and the initial evidence presentation duty to show that the proposal complies with the 'terms of the ordinance' which expressly govern such a grant. . . . This rule means that the applicant must bring the proposal within these specific requirements expressed in the ordinance for the use (or area, bulk, parking or other approval) sought as a special exception. Those specific requirements, standards or 'conditions' can be classified as follows:

---

[1] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10913.

1. The kind of use (or area, bulk, parking or other approved—i.e., the threshold definition of what is authorized as a special exception;

2. Specific requirements or standards applicable to the special exception—e.g., special setbacks, size limits; and

3. Specific requirements applicable to such kind of use even when not a special exception.

. . .

Every special exception will always involve item 1 above and must involve item 2 if it is not to involve an unconstitutional delegation of legislative power.

(Citations omitted.)

We first consider[2] whether the board erred in its determination that "the Appellant[s] failed to establish . . . that [they] would limit their activities on the residential premises to those activities typically and customarily associated with realtors. . . ."

With respect to ordinance authorization of a special exception for Home Professional Offices, section 12.41(e)(2) provides:

*Home professional offices shall be limited to the office or studio of a* physician, surgeon, dentist, artist, lawyer, engineer, architect, public accountant, chiropractor or *realtor.* (Emphasis added.)

The South Whitehall Township zoning ordinance does not define the term "realtor". Therefore, we turn to section 201 of the Real Estate Licensing and Regis-

---

[2] Where, as here, the common pleas court took no additional evidence, our scope of review is limited to determining whether the board made an error of law or abused its discretion and whether the board's decision is supported by substantial evidence. *Kern v. Zoning Hearing Board of Tredyffrin Township*, 68 Pa. Commonwealth Ct. 396, 449 A.2d 781 (1982).

tration Act[3] for guidance. That section defines a "broker" as:

Any person who, for another and for a fee, commission or other valuable consideration:

(1) Negotiates with or aids any person in locating or obtaining for purchase, lease or acquisition of interest in any real estate;

(2) Negotiates the listing, sale, purchase, exchange, lease, timeshare and similarly designated interests, financing or option for any real estate;

(3) Manages or appraises any real estate;

. . . . 63 P.S. §455.201.

Consistent with that definition, Mr. Trenge testified:

Q. And what is your, your present business, does that entail the buying and selling of real estate?

A. Yes.

Q. And if you are granted this exception will you conduct that business out of your home?

A. Yes.

According to Mr. Trenge's testimony before the zoning board, the Trenges' business substantially revolves around a plan of lots in South Whitehall Township known as Springhouse Farms West which are owned by Mrs. Trenge. Mr. Trenge stated that he is the "builder" of those lots. Mr. Trenge is the principal of two corporations which develop those properties. Farmington Real Estate is the sales arm of the business. Through Farmington, the Trenges sell both individual lots and houses to be built on those lots. James River Residential Sales, Inc. is the corporation through which the Trenges construct the houses. The registered office address of

---

[3] Act of February 19, 1980, P.L. 19, *as amended,* 53 P.S. §455.201.

each corporation is 999 Springhouse Road, which is the Trenges' home address.

The board also concluded that the Trenges failed to demonstrate that "the activities on the premises would not entail a broad range of uses encompassing the conduct of a construction and development business. . . ." However, there is no substantial evidence in the record to support that conclusion. Although James River Residential Sales, Inc., uses the Trenges' home address as its registered address, and its telephone number is the same as the Trenges' residence, Mr. Trenge stated:

Q.   . . . is it your intention to operate a development company from your home?

A.   No.

Q.   Will you have any contractors or subcontractors, materialmen or laborers?

A.   No. We have a construction office on our site, that we do that out of.

Q.   We're talking now about Springhouse Farms West?

A.   Yes.

. . . .

Q. You have never had [contractors, subcontractors, laborers and materialmen come to your home]?

A.   That's never happened.

. . . .

Q.   Do you have any drafting table set up in your home in which you do construction drawing?

A.   No.

Q.   What specifically do out [sic] of your home concerning James River Residential Sales?

A.   Just the sales end of our business. . . . Construction of the business is handled from our construction office, which is at Walbert Avenue.

. . .

Mr. Trenge testified that James River maintains a construction office at another site and that no contractors, subcontractors, laborers or materialmen would appear at the Trenge residence. He also stated that the prospective buyers who visit the Trenge home discuss not only the purchase of a piece of land at Springhouse Farms West, but also the construction of a house on that land to be built by James River.[4] Mr. Trenge also testified that the Trenges intend, upon the granting of a special exception, to "continue as we were."

Thus, Mr. Trenge's testimony establishes that the Trenges' business involves real estate development as well as brokerage. However, in addition to acting in their individual interests, the Trenges are acting as real estate sales personnel, and acting in such capacity is a common role of a realtor.

We conclude that the essential nature of the activity which the Trenges propose to conduct in their home falls within the term "realtor" as a use authorized by way of special exception. The board erred as a matter of law in its construction of the term "realtor," and in its conclusion that the use proposed by the Trenges did not constitute those activities customarily associated with realtors.

---

[4] Mr. Trenge testified:

We've always maintained a real estate sales office at [a] location [other than our home].

But since we live there and we work in there [sic] area, we—when we had customers that—who wanted to buy our properties, which is really the [sic] basically what we do, we would ask them to come to our houses. Mainly to save us the wear and tear of going to some other location. And we would discuss the building that they wanted to build there in our house.

The board set forth three additional grounds explaining its conclusion that the Trenges failed to meet the specific requirements of the ordinance.

The board stated that the Trenges were unable or unwilling to identify which portions or areas of the home would be occupied as or devoted to the home professional office.

No portion of the zoning ordinance requires that the applicant specify the area of the home to be used, nor is he required to submit plans of the office area. However, section 12.41(e)(5)(B) states that the office may not occupy more than one-third of the above ground area of the building nor more than one-third of the first floor area. On cross-examination, Mr. Trenge testified that he and his wife had not yet decided where in their home they planned to place their office. However, the applicants did give assurance on the record that they would comply with all such "conditions."

Section 12.41(e)(6) provides that:

Home occupations and home professional offices shall take all reasonable precautions and measures to preclude such office from adversely affecting the safe and comfortable enjoyment of adjacent properties.

Such measures shall include but not necessarily be limited to screening, fencing, restrictions of hours of operation, and provision of adequate off-street parking.

The board also noted that the Tenges were unspecific as to methods and hours of operation, except to state that they would want to operate no less than 40 hours per week, 6 days per week.

Because the ordinance does not mention "methods of operation," we do not address the Trenges' failure to produce evidence on that point. We could reasonably construe the Trenges' proposal of 40 hours and 6 days

per week as 9:00 a.m. to 5:00 p.m., Monday through Saturday. However, the board did not so find, and we do not therefore impose our inference. Therefore, the Trenges failed to specify the home office's daily hours of operation.

The board next concluded that no proposals were advanced regarding the expansion, macadamizing or proper delineation of available parking facilities, and that no testimony was introduced as to precautions that could or would be taken to minimize traffic hazards on the roadway by virtue of motor vehicles parking off the premises and exiting from the premises.

Subsection 12.41(e)(7) further provides:

It shall be the duty of the residence to arrange or limit the activities of the occupation so that the parking of · residents', employees' and customers' cars shall not be a nuisance to neighbors, cause congestion on adjacent or surrounding streets, or create a traffic hazard.

Although Mr. Trenge did not propose any expansion or improvement of the available parking facilities at the Trenge residence, he stated that the present facilities, a portion of the Trenges' lot which is covered with stones, accommodates eight cars. Mr. Trenge stated that at any time, four to six of those spaces could be occupied by cars belonging to the Trenge family. He stated that he expects approximately twenty customers coming to his home office per year. Mr. Trenge testified:

Q. Would you, how many spaces do you feel you need at your home for the conduct of your business, and include in that answer spaces for the parking of vehicles of family members?

A. I don't think we need any more than we have now.

This evidence satisfies the applicant's initial presentation duty. However, the board was then persuaded by

the testimony of objectors who testified as to the heavily traversed roadway which runs along the Trenges' property and the incidents of cars parking improperly on and off the premises and the hazards and traffic congestion created by vehicles backing onto the roadway. Because substantial evidence in the record supports the board's determination that the parking facilities on the Trenges' property, as they presently exist, are not sufficient to preclude traffic hazards and congestion, we must conclude that the applicant did not successfully sustain the persuasion burden as to provision of adequate off-street parking.

Although the Trenges did not set forth specific proposals as to area requirements, and did not successfully persuade the board that the existing facilities for parking and ingress and egress to the Trenges' property, would not be a nuisance to neighbors, cause congestion or create a traffic hazard, they now argue that Mr. Trenge's statement that the Trenges are willing to abide by any conditions imposed by the zoning hearing board establishes prospective compliance with the ordinance.

Indeed, in *Foster Grading Co. v. Venango Township Zoning Hearing Board,* 49 Pa. Commonwealth Ct. 1, 412 A.2d 647 (1980), we reversed the zoning hearing board's finding that the applicant, in applying for a conditional use permit, had failed to comply with that section of the zoning ordinance which required that the holder of a conditional use must have acceptable fire protection and fighting equipment readily available when engaging in activities involving flammable or explosive materials. An employee of the applicant testified that although he was not familiar with the details of the applicable fire equipment standards, the company would comply with them as well as with the requirements of the Federal Occupational Safety and Health Administration. He further testifed that the

company has, in its past operations, always complied with local and federal fire control requirements. We concluded, "Before providing the facility, [the applicant] can hardly do more than attest to its intention to comply with the ordinance." Additionally, in *Heck v. Zoning Hearing Board for Harveys Lake Borough,* 39 Pa. Commonwealth Ct. 570, 397 A.2d 15 (1979), we held that it was an abuse of the board's discretion to find that a property owner intended a use other than that to which he had testified.

However, in the present case, despite Mr. Trenge's statement that he would comply with all conditions set forth by the board, his later testimony is not consistent with that statement.

Mr. Trenge testified:

Q. If the zoning board of adjustment incorporated as their terms and conditions, the rules and regulations concerning standards for place of business in the dwelling house by, imposed by the real estate commissions [sic] of the Commonwealth of Pennsylvania, would you abide by those?

A. I'll have to see what they are.

Q. Do you know what they are?

A. I'd have to review them.

. . . .

Q. If the board saw fit to grant this special exception would you be willing to move that parking lot to a different places [sic]?

A. Depends where.

Q. Well, some other place on your property that perhaps might be safer?

A. Well, we'd have to determine that.

Q. Who would have to determine it?

A. Well, the board and I.

This testimony convinces us that the board did not abuse its discretion by failing to construe Mr. Trenge's broad statement of his intent to comply with the board's conditions as a satisfactory substitute for concrete area and parking proposals which the board could examine.

Because we conclude that the board did not err in holding that the Trenges' proposed use failed to satisfy three of the standards and criteria set forth in the zoning ordinance for a home professional office special exception, we affirm the court below.

ORDER

Now, March 14, 1986, the order of the Court of Common Pleas of Lehigh County, No. 84-C-1681, dated April 22, 1985, is affirmed.