**VIM, INC, f/k/a Virginia Inn Management, Inc. et al., Plaintiffs,**

v.

**SOMERSET HOTEL ASSOCIATION, et al., Defendants.**

**Civ.A. No. 96–67J.**

United States District Court, W.D. Pennsylvania.

Sept. 10, 1998.

## MEMORANDUM OPINION AND ORDER

D. BROOKS SMITH, District Judge.

This is an antitrust case in which plaintiffs, who wished to and ultimately did build and operate a Hampton Inn hotel in Somerset, Pennsylvania, have sued various defendants who operated existing, competing hotels in that city. The gravamen of plaintiffs' claims is that defendants, through the use of a trade group known as the Somerset Hotel Association, conspired to impede the construction of the Hampton Inn by interposing patently meritless legal challenges to plaintiffs' positions before Somerset Borough's zoning and planning commissions, and before the courts. Defendants have responded with motions for summary judgment, asserting that the *Noerr–Pennington* doctrine insulates their conduct from antitrust attack, regardless of its motivation. Because the undisputed facts of record demonstrate that defendants' legal challenges were not objectively baseless as contemplated by *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993), I will grant the motions and enter summary judgment for defendants.

Ronald P. Carnevali, Jr., Spence, Custer, Saylor, Wolfe & Rose, Johnstown, PA, Mary E. Kohart, Patricia Proctor, James R. Macrae, Drinker, Biddle & Reath, Philadelphia, PA, Phillip J. Binotto, Jr., Jana L. Phillis, Thomas C. Gricks, III, Schnader, Harrison, Segal & Lewis, Washington, PA, for plaintiffs.

Gregg M. Rosen, Stephen J. Laidhold, Thomas M. Ferguson, Sable, Makoroff & Gusky, Pittsburgh, PA, for defendants except Somerset Motel and K & M Properties of Somerset, Inc.

John P. Vetica, Jr., Pittsburgh, PA, for Somerset Motel, A Limited Partnership, dba Knights Inn, defendant.

Joseph A. Katarincic, David A. Borkovic, Richard M. Smith, Katarincic & Salmon, Pittsburgh, PA, for K & M Properties of Somerset, Inc., dba Somerset Motel Enterprises, dba Days Inn, defendant.

### I.

The material facts, viewed in the light most favorable to plaintiffs, are as follows. In January 1995, Virginia Inn Management ("VIM") contracted to purchase a parcel of land adjacent to an existing truck stop located just off the Somerset Turnpike exit; on this property they hoped to construct their Hampton Inn. Dkt. no. 51, Exh. 1. This tract of land then served as extra parking space for the truck facility and was zoned such that a hotel could be built upon it.[1] The design of VIM's Hampton Inn, however, was such that a special height exception would have to be obtained from the zoning board, in addition to a general site plan approval from the planning commission.

VIM's proposed hotel was to be the first major overnight lodging facility built in Somerset in many years. As such, it was viewed

---

1. The land was zoned M–1. Dkt. no. 51, Exh. 15. A hotel may be lawfully be constructed in such a district. *See id.,* Exh. 11, Art. 5, §§ 8.2(7), 5.2(10).

with no small amount of consternation by its competitors, who in response, formed the Somerset Hotel Association to represent their common interests. *Id.*, Exh's 3–4. The association decided to send representatives to the public meetings and hearings concerning the proposed Hampton Inn, expressing opposition to the project. *Id.*, Exh. 7.

The first of these hearings occurred on April 4, 1995 before the Somerset Zoning Hearing Board. *See id.*, Exh. 12. VIM's proposed design height for its five-story Hampton Inn was fifty-five feet, ten feet higher and two more floors than normally permitted under the local zoning ordinance. *Id.* at 5; *see also id.*, Exh. 11, at 6 (table). That ordinance, however, provided for a special height exception to be granted upon a showing by VIM that the extra height would not "substantially affect adversely the uses of adjacent and neighboring property." *Id.*, Art. 12, § 4.

At the zoning hearing, VIM's counsel put evidence on the record that was intended to show that the extra ten feet would not adversely affect adjoining properties. This evidence took the form of a plan view of the site, photographs of other Hampton Inns, testimony from two engineers retained by VIM, and the testimony of the owner of the truck stop (who was also the seller of the land). *Id.* Exh. 12, at 3–12, 16–22. VIM, however, did not perform any property-by-property analysis of how its proposed use would affect the views and signage of the adjoining businesses, nor did it provide any front, rear or side elevation drawings of the proposed hotel. *See id.* at 44–53.

For their part, defendants offered no evidence that the extra building height would adversely affect the uses of their properties, or, for that matter, on any other issue. Instead they argued concerning the increase in vehicle traffic that they believed would accompany the new Hampton Inn, and the possibility, feared by local business owners, that the Pennsylvania Turnpike Commission would consider relocating the Somerset interchange should there be an increase in congestion and vehicular accidents. *Id.* at 22–26, 31–32. Defendants then moved to continue the proceedings while they developed their rebuttal evidence. *Id.* at 47–50.

Defendants' objections, although vociferous, went to the issue of whether a hotel should be permitted to be built at the site *vel non*, not whether an extra ten feet in its height would adversely affect their properties. Because VIM had the right, under the zoning ordinance, to build a hotel on the site, defendants' contentions were immaterial to the board's decision, and the borough solicitor so informed the board members at the hearing. Thus, the board voted, 3–1, to grant the special exception, with one member dissenting because she felt that VIM's evidence was insufficient to give her a sense of how the hotel would affect the surrounding properties. *Id.* at 53, 65. No action was taken on the motion for continuance.

On May 2, 1995, defendant Somerset Hotel Association filed a land use appeal in the court of common pleas challenging the zoning board's decision to grant the special height exception. *Id.*, Exh. 33. One basis of this appeal was that VIM had failed to come forward with sufficient evidence that its hotel's additional ten feet in height would not have an adverse effect on the adjoining property owners. *Id.*

On May 25, the Somerset Borough Planning Commission held a public meeting to consider VIM's proposed site plan for its hotel. *Id.*, Exh. 32. Again, defendants argued, without presenting evidence, that the hotel would increase traffic around the Somerset interchange, and that approval be delayed until a traffic study could be conducted, as previously requested by the Turnpike Commission. *Id.* In this proceeding, however, the zoning ordinance required the planning commission to examine the project's effect on internal and external traffic patterns in making its determination whether to approve the site plan. Dkt. no. 46, Exh. B., §§ 4(1)(e), 4(3). Nevertheless, the borough solicitor instructed the commissioners that they could not legally require a traffic impact study or consider any traffic effects beyond the borders of the site itself. Dkt. no. 51, Exh. 32. The commission accordingly approved the site plan, contingent on the appeal of the zoning exception being resolved in

VIM's favor. *Id.* Defendants appealed this decision to the court of common pleas as well.

Both appeals were consolidated and on August 22, 1995, defendants filed motions to open the record and present additional evidence, although initially defendants had no offer of proof in support of the motions. *See id.,* Exh. 35, at 3, 39. Eventually, however, defendants' evidence was confined solely to the position of the Turnpike Commission (expressed by one of its officials) that traffic around the Somerset interchange was a real concern. *Id.* at 44–45. This default, combined with the fact that the evidence was available to defendants at the time of the planning commission hearing, led the motions judge to decline to open the record, without prejudice. *Id.,* Exh. 36.

Thus, both appeals proceeded on their merits, the zoning appeal on the theory that VIM had failed to produce sufficient evidence that its hotel's extra height would not adversely affect neighboring properties, and the planning appeal on the contention that the commission improperly failed to comply with the ordinance's requirement that the hotel's effect on external traffic patterns be considered. Defendants renewed their motion to open the record, but their proposed witness, a representative of the Turnpike Commission, would have testified only that the Commission thought that a traffic study *should* be performed, but not that the Turnpike Commission had the power to *require* a study or otherwise delay the project. *Id.,* Exh. 39, at 50. Given this limited testimony, defendants ultimately decided not to even offer it. *See id.* at 50. On October 4, 1995, the court denied both appeals, *Id.,* Exh. 40; defendants did not appeal to the Commonwealth Court.

As a result of defendants' ultimately unfounded opposition to the Hampton Inn project, defendants were unable to begin construction by the time winter set in in 1995, and were forced to wait until the Spring of 1996. *Id.,* Exh. 20. Plaintiffs estimate that they were delayed a total of 228 days because of the actions of the defendants. *Id.*

Plaintiffs filed suit on April 2, 1996, alleging that defendants engaged in an antitrust conspiracy in violation of the Sherman Act, as well as civil conspiracy, wrongful use of civil process, abuse of process and intentional interference with contractual and prospective business relationships under state law. Dkt. no. 1. On March 27, 1997, I denied defendants' motions to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), dkt. no. 27. Answers and summary judgment motions were subsequently filed. Discovery is complete, and those motions are now ripe for adjudication.

## II.

Summary judgment is appropriate where admissible evidence fails to demonstrate a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the nonmoving party bears the burden of persuasion at trial, the moving party must show that the nonmoving party's evidence is insufficient to carry that burden. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party can create a genuine issue of material fact by pointing to evidence in the record sufficient to support a jury verdict in its favor at trial. *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 330 (3d Cir.1995). Alternatively, "the burden on the moving party may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548 (internal quotation marks omitted). "[S]ince a complete failure of proof concerning an essential element," *id.* at 323–24, 106 S.Ct. 2548, on which a party bears the burden of proof at trial establishes that the moving party is "entitled to a judgment as a matter of law," the nonmoving party must establish the existence of every element essential to its case. *Id.* Such evidence must be significantly probative and more than "merely colorable." *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994). The nonmoving party is afforded the benefit of all reasonable inferences drawn from the record. *Id.*

Once the moving party has satisfied its burden, the nonmoving party is required by Fed.R.Civ.P. 56(e) to establish that there remains a genuine issue of material fact.

*Clark v. Clabaugh,* 20 F.3d 1290, 1294 (3d Cir.1994). The nonmovant "may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law ..." *id.* at 248, 106 S.Ct. 2505, and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 257, 106 S.Ct. 2505.

In determining whether a nonmovant has established the existence of a genuine issue of material fact requiring a jury trial, the evidence of the nonmovant must "be believed and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. 2505. Whether an inference is justifiable, however, depends on the evidence adduced. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 595–96, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment. *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 382 n. 12 (3d Cir.1990). Likewise, "simply show[ing] that there is some metaphysical doubt as to the material facts" does not establish a genuine issue for trial. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348.

### III.

Defendants move for summary judgment, arguing that their conduct is completely insulated from antitrust attack under the *Noerr–Pennington* doctrine.[2] "Not so," counter the plaintiffs, who assert forcefully that defendants' obstructionist tactics fall within the "sham exception" to *Noerr–Pennington.* To sort out these contentions, it is first necessary to explore the contours of *Noerr–Pennington.*

### A.

The *Noerr–Pennington* doctrine was developed by the Supreme Court in recognition of the fact that the right to petition the government for redress of grievances, a right protected by the First Amendment, generally trumps the statutory right of competitors to be free from unfairly anticompetitive conduct under antitrust law. *See Columbia Pictures,* 508 U.S. at 56, 113 S.Ct. 1920. Thus, "[t]hose who petition government for redress are generally immune from antitrust liability[,]" *id.,* even though the purpose of that petitioning may be to restrain competition. *See Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 138–39, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).

Nevertheless, the *Noerr–Pennington* doctrine does not insulate from antitrust attack conduct that "is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor...." *Noerr,* 365 U.S. at 144, 81 S.Ct. 523. This "sham exception" was refined by the Supreme Court in *Columbia Pictures* and has a very narrow scope. As the Court opined:

We now, outline a two-part definition of "sham" litigation. First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr,* and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere *directly* with the business relationships of a competitor through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon. This two-tiered process requires the plain-

2. Defendant K & M Properties of Somerset, Inc., which operates the local Days Inn, has additionally moved for summary judgment on the ground that it successfully withdrew from any unlawful conspiracy and should not be held liable. Dkt.

nos. 40, 41. Because I conclude that the *Noerr–Pennington* doctrine provides a complete defense to the allegations of the complaint, I need not reach this issue.

tiff to disprove the challenged lawsuit's *legal* viability before the court will entertain evidence of the suit's *economic* viability.

*Columbia Pictures,* 508 U.S. at 60–61, 113 S.Ct. 1920 (citations and internal quotation marks omitted).

The Supreme Court then further elaborated on the definition of objective baselessness, equating it first to the concept of lack of probable cause as applied in the common-law tort of wrongful civil proceedings. *Id.* at 62–63, 113 S.Ct. 1920. On that point, the Court noted that probable cause "requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication." *Id.* (citing, *inter alia,* Restatement (Second) of Torts § 675 comment e (1977)). Once probable cause for defendant's legal actions is shown, the antitrust plaintiff fails as a matter of law to satisfy the objective prong of the sham exception. *Id.* at 63, 113 S.Ct. 1920. A few pages later, in vindicating the defendant's conduct, the Court noted that defendant's lawsuit against the plaintiff met the requirements of nonfrivolity under Fed.R.Civ.P. 11. *Id.* at 65, 113 S.Ct. 1920.[3]

**B.**

Here, I assume, without deciding, that defendants' purpose for opposing the Hampton Inn was to restrain competition. The issue that must be determined, then, is whether its tactics in prosecuting that opposition were objectively baseless. I conclude they were not.

■ In deciding this issue, as on any motion for summary judgment, if "there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide probable cause as a matter of law."[4] *Columbia Pictures,* 508 U.S. at 63, 113 S.Ct. 1920. I must also be mindful that, even though "the antitrust defendant has lost the underlying litigation, a court must resist the understandable temptation to engage in *post hoc* reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation." *Id.* at 60 n. 5, 113 S.Ct. 1920 (citation and internal quotation marks omitted). Thus, I must determine whether, as a matter of state law, it was objectively reasonable for defendants to challenge the decisions of the zoning and plan-

---

**3.** The state law standard for determining whether a land use appeal is frivolous is similar to the one applied under a *Noerr–Pennington* analysis:

> A frivolous appeal is one in which no justiciable question has been presented and the appeal is readily recognizable as devoid of merit in that there is little prospect that it can ever succeed.

*Abbey v. Zoning Hearing Bd.,* 126 Pa.Cmwlth. 235, 559 A.2d 107, 112 (Pa.Commw.Ct.1989) (quoting Black's Law Dictionary 601 (5th ed.1979)).

**4.** Defendants rely upon the "expert opinion" of Attorney David W. Craig, retired President Judge of the Commonwealth Court of Pennsylvania, to support their argument that their land use appeals were "not objectively baseless as a matter of law...." Dkt. no. 45, at 19. It detracts not at all from my high regard for former Judge Craig, nor the esteem in which he is held by the legal community, to observe that lack of objective baselessness is not the sort of issue that lends itself to expert testimony under Fed.R.Evid. 702 and 704. While "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact[,]" *id.,* "an expert may not state his or her opinion as to legal standards nor may he or she state legal

conclusions drawn by applying the law to the facts." *Okland Oil Co. v. Conoco, Inc.,* 144 F.3d 1308, 1328 (10th Cir.1998); *accord Burger v. Mays,* 176 F.R.D. 153, 156–57 (E.D.Pa.1997); *Haberern v. Kaupp Vascular Surgeons Ltd.,* 812 F.Supp. 1376, 1378 (E.D.Pa.1992); *Rich v. Bailey,* No. 95–6932, 1996 WL 745298, *5 (E.D.Pa. Dec. 23, 1996) (citing cases), *aff'd mem.,* 135 F.3d 766 (3d Cir.1997). "Because the jury does not decide ... questions of law, such testimony is not helpful to the jury and so does not fall within the literal terms of Fed.R.Evid. 702.... This is because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial." *Nieves–Villanueva v. Soto–Rivera,* 133 F.3d 92, 100 (1st Cir.1997). Indeed, "[e]ach courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Burkhart v. Washington Metro. Area Transit Auth.,* 112 F.3d 1207, 1213 (D.C.Cir.1997); *accord Askanase v. Fatjo,* 130 F.3d 657, 673 (5th Cir.1997). Accordingly, because such testimony would not assist the jury to determine a fact in issue, I cannot consider it as factual evidence on a motion for summary judgment. Nevertheless, I will treat Attorney Craig's report as additional legal argument, which it plainly is, and to which plaintiffs have had ample opportunity to respond.

ning boards; that is, whether a reasonable litigant in their position would "belie[ve] that there is a chance that a claim may be held valid upon adjudication." *Id.* at 62–63, 113 S.Ct. 1920.

### 1.

The Somerset Borough Zoning Ordinance provides that certain "buildings and uses are permitted as special exceptions if the Board finds that, in its opinion, as a matter of fact, such exceptions will not substantially affect adversely the uses of adjacent and neighboring property." Dkt. no. 46, Exh. B, Art. 12 § 4, at 56. A special height exception is specifically provided for land, such as plaintiff's, located in the M–1 and M–2 districts. *Id.* § 4.3, at 58.

Under Pennsylvania law, "as to specific requirements of the zoning ordinance, the applicant has the persuasion burden, as well as the initial evidence presentation burden." *Bray v. Zoning Bd. of Adj.*, 48 Pa.Cmwlth. 523, 410 A.2d 909, 912 (Pa.Commw.Ct.1980). "This rule means the applicant must bring the proposal within the specific requirements expressed in the ordinance for the use ... sought as a special exception." *Id.* at 911; *accord Abbey v. Zoning Hearing Bd.*, 126 Pa.Cmwlth. 235, 559 A.2d 107, 109 (Pa. Commw.Ct.1989); *Trenge v. Zoning Bd. of Adj.*, 95 Pa.Cmwlth. 583, 506 A.2d 490, 490 (Pa.Commw.Ct.1986). Once the applicant has made that showing, the objector has "the burden of showing the proposal to be detrimental to public health, safety and welfare." *Id.* (citation and internal quotation marks omitted). If the applicant's burden is not met, the special exception cannot be granted. *See Trenge*, 506 A.2d at 494; *Sites v. Zoning Hearing Bd.*, 5 Pa.Cmwlth. 78, 287 A.2d 909, 910 (Pa.Commw.Ct.1972).

█ Here, then, plaintiffs bore the burden of showing that its proposed extra height for the Hampton Inn would "not substantially affect adversely the uses of adjacent and neighboring property." To meet this burden, plaintiffs introduced a plan view of the site, photographs of other Hampton Inns, the testimony of its engineers and the testimony of the seller of the land. The site plan, however, did not include an elevation view and failed to show how the proposed over-height hotel would affect the signage or other aspects of adjoining properties. Nor did it include any depictions of the hotel in relation to those properties. Moreover, plaintiff's engineer, Scott Krabill, testified to his opinion that the Hampton Inn would not adversely affect the surrounding properties, but did not explain in any detail the basis for his opinion. *See* Dkt. no. 46, Exh. E, *passim.* A majority of the board found this evidence sufficient to sustain the plaintiff's burden and granted the special height exception. Yet, one of the four board members dissented:

> MRS. RYAN: Well, I have—I just have some concerns. I have a little trouble with spatial things. It's my own problem; but trying to picture how—just how high this building is, I find that difficult to do without more information on it.

*Id.* at 53. On appeal, as stated earlier, the Court of Common Pleas affirmed.

The relevant inquiry here, it bears repeating, is not whether plaintiffs actually met their burden and legitimately obtained their special exception, but whether defendants could have reasonably believed that their court challenge to the special exception might be successful. I conclude that such a reasonable belief could have been formed. Plaintiff's evidence, to put it mildly, was sparse. Other than the self-serving testimony of the seller that the Hampton Inn would not be detrimental to his truck stop, plaintiff offered no other landowner's testimony, no diagrams of the hotel in context with the adjoining properties, and no objectively verifiable evidence of the effect, if any, on the neighboring properties' signage, view or light. Indeed, one member of the board could not determine from the evidence presented whether plaintiffs qualified for the special exception or not, and voted against it. From this, it is impossible to conclude that the appeal to common pleas court on the issue of whether plaintiff met its initial burden to qualify for the exception was objectively baseless, without probable cause, or frivolous. Hence, the zoning appeal was not a sham.

2.

■ The Somerset Borough Zoning Ordinance requires that all "major uses" of land, including hotels, "be subject to review by the Planning Commission[.]" Dkt. no. 46, Exh. B, Art. 14, § 4(1), at 73. It further provides that:

> The Planning Commission shall examine the proposed development with respect to the traffic and circulation patterns, internal and external, relation to major thoroughfares, utilities, drainage, and community facilities. . . .

*Id.* § 4(3).

Notwithstanding this requirement, and the heated discussion at the commission meeting over the impact the Hampton Inn would allegedly have on traffic in and near the Somerset interchange, the borough solicitor instructed the commissioners as follows:

> OK, now there has been discussion about traffic and traffic impact studies and I believe that term traffic impact study first appeared in an unsolicited letter from the Pa. Turnpike Commission addressed to the mayor with a copy to me. . . . [I]n any event, our ordinance does not present the opportunity for the Planning Commission to impose as a requirement for site plan approval that a traffic impact study be done. When you are looking at a site plan, you are looking at the site, not the other areas beyond the site where the traffic may flow, and from what I can gather, the turnpike commission is interested in just that and that is what the traffic impact study is directed to. . . . I can tell you that under Pennsylvania law, even if a traffic impact study came out the worst, it could possibly be you still could not deny approval of this site plan because the development would cause too much traffic. If you did that, it would strongly be against my advice because if you did that you are [sic] condemning [the] property and it's my job to keep you from doing those kinds of things; somebody's going to have to pay for that property and it's not going to be my client. . . .

Dkt. no. 46, Exh. I at 282 (spelling and punctuation of original transcript corrected for clarity). The Board Chairman then stated, "Based on what our solicitor just told me we legally cannot do what you have requested." The matter was then moved, and the site plan approved unanimously.

An appeal from this decision cannot be considered objectively baseless. The plain language of the ordinance states that the commission must examine internal and external traffic and circulation patterns, but the borough solicitor instructed the commission that external traffic patterns were outside the scope of its review and suggested that denying the proposed site plan would amount to a compensable taking. Based on this advice, the chairman told the objectors that the commission was powerless to grant relief. Again, regardless of whether such an appeal might or might not ultimately succeed, it is clear that a nonfrivolous case could be made that the commission disregarded its statutory mandate when it approved the site plan. Accordingly, this appeal was not a sham, either.

3.

Hoping to avoid the *Columbia Pictures* test, plaintiffs rely on dictum in one footnote of that opinion to the effect that the *Noerr–Pennington* doctrine "permits the imposition of antitrust liability for a litigant's fraud or other misrepresentations." 508 U.S. at 62, 113 S.Ct. 1920; *see Whelan v. Abell,* 48 F.3d 1247, 1255 (D.C.Cir.1995) ("However broad the First Amendment right to petition may be, it cannot be stretched to cover petitions based on known falsehoods."). Notably, however, there is no evidence on this record that defendants made any false submissions to the court of common pleas or otherwise perpetrated a fraud upon the court. In any event, to the extent that plaintiff is arguing that the fraud consisted of the defendants never actually caring about traffic hazards (as opposed to their own economic interests), *see* dkt. no. 50, at 18–24; dkt. no. 59, at 9–12, this argument misses the mark. First, defendants never had to represent to the court or any other body that they *cared* about increased traffic, only that traffic constituted a valid basis for denying the application. Second, this argument attempts an end run around *Columbia Pictures'* core holding that objectively reasonable litigation cannot be a sham, regardless of its subjective motivation.

Thus, I reject plaintiff's contention that *Columbia Pictures'* two-part test does not apply, and will dismiss plaintiff's antitrust claims in their entirety as barred by the *Noerr–Pennington* doctrine.[5]

### IV.

■ Plaintiffs have also asserted state law claims for civil conspiracy, wrongful use of civil process, abuse of process and intentional interference with contractual and prospective business relationships. It is well-settled in this circuit, however, that claims for civil conspiracy, tortious interference and malicious use of process are subject to *Noerr–Pennington* immunity.[6] *See Brownsville Golden Age Nursing Home, Inc. v. Wells,* 839 F.2d 155, 156, 160 (3d Cir.1988). Thus, the same analysis and conclusions set forth above apply to these claims as well.[7]

An appropriate order follows.

NOW, THEREFORE, this 10th day of September 1998, upon consideration of defendants' motions for summary judgment, dkt. nos. 40, 43, 44, and the responses thereto, it is hereby ORDERED and DIRECTED that the aforesaid motions are GRANTED and plaintiffs' complaint is DISMISSED WITH PREJUDICE. The Clerk of Court shall mark this case CLOSED.

---

**5.** Because of this disposition, it is unnecessary for me to consider plaintiffs' argument, dkt. no. 50, at 43–47, that their antitrust claims survive summary judgments on their merits.

**6.** This holds especially true for malicious prosecution claims asserted against zoning objectors, where it is important not to chill the First Amendment Rights of neighbors to come forward and make their positions known. *See Matter of Larsen,* 532 Pa. 326, 616 A.2d 529, 592 (Pa. 1992).

**7.** The *Brownsville* case did not involve a claim for abuse of process (as opposed to wrongful use of civil process); nevertheless, that court did cite with approval a Colorado case applying the *Noerr–Pennington* doctrine to that tort. 839 F.2d at 160 (citing *Protect Our Mountain Envt., Inc. v. District Court,* 677 P.2d 1361, 1369 (Colo.1984)). Plaintiffs have not argued any principled reason why abuse of process should be treated any differently under a *Noerr–Pennington* analysis than wrongful use of civil process, and I can discern no such difference. Hence, I will dismiss this claim as well.